THOS. CLARK v. REUBEN S. JONES.

PRINCIPAL AND AGENT. *Liability of principal.* Where an agent who is acting in good faith and without fault, in proper service of his principal, is subjected to expense, or is sued on a contract made by him, or for an act done pursuant to his authority, the principal is bound to indemnify and reimburse him for the expense.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

TAYLOR & CARROLL for complainant.

MYERS & SNEED for defendant.

FREEMAN, J., delivered the opinion of the court.

Complainant charges that he purchased at Madison, Indiana, a pair of match mares of one Martin Mullen, as agent of respondent, in pursuance of the following telegram :

MEMPHIS, TENNESSEE, August 25, 1877.

*Thos. Clark, care of Martin Wade & Son, Madison, Indiana:*

If you can buy the pair of match mares from Mullen at $300, buy them if guaranteed sound and safe for family use. Ship them first boat, payable on delivery. Answer quick. R. S. JONES.

He claims to have followed instruction, bought the mares, "they being guaranteed by Mullen sound and safe for family use."

Jones failed to pay on delivery; in fact had bought them for E. M. Apperson, who tried them, and found one unsound, as is claimed, and the other kicked badly in harness and was unsafe. The mares

were thereupon placed in a livery stable at Memphis on Mullen's account, they having been tendered back to him by Apperson by letter.

Complainant, some time after, was sued in Madison, Indiana, for the price of the mares by Mullen, and a recovery had for over $300 and costs, besides forty or fifty dollars attorney's fees. He files this bill for reimbursement, on the ground that he purchased as agent for complainant, within his authority, and therefore his principal must respond for the amount paid out by him in that suit, Jones having been notified of the pendency of the suit, and requested to defend it. He also claims to have defended the suit at the instance of Jones and Apperson, and that he had been repeatedly promised payment of his present demand.

The defense is, that complainant failed to take the guaranty that the mares were "safe for family use and sound" as required, and second, that he did not buy in the name of Jones, but in his own name, and therefore assumed the responsibility for their soundness and qualities, shipping them himself to Jones. It is admitted respondent was informed of the suit in Indiana, but denied that Jones was notified he would be expected to pay in the event of recovery, or ever promised to do so. The contest is over the question, whether Clark conformed to his instructions and bought the mares with the guaranty, as required by the telegram, and whether he bought for Jones or in his own name. As to the latter question, there can be no doubt. Mullen, it is true, and his son and partner say, they sold to Clark

personally, but all the testimony shows this to be untrue. They had corresponded with Jones as to sale of the mares before the telegram was sent, the bill of lading was made out to Jones in the name of Mullen as consignor, accompanied by a letter advising of the shipment and requesting payment as soon as possible from Jones, in precise accord with the telegram.

We think it equally certain the guaranty was required and the mares shipped with such a guaranty, though no writing to that effect was given. Mullen knew the purpose in buying; had written to Jones before the sale sometime, representing the mares as sound and safe for family use. He insists in his testimony they were sound and safe, and it is most unnatural that a sensible man should buy horses for use for a family that he had never seen, after an offer to guaranty, without requiring they should be guaranteed. There is no doubt the telegram was read to or by Mullen, and he knew the conditions on which they were to be sent, and undertook to comply with its terms.

The case, then, is of an agent who buys property for another, in another State, having no interest whatever in it, and is sued and arrested in that State afterward for the money, and compelled, however wrongfully, to pay the price. That judgment can have no effect in this case, because between different parties. There is nothing to show the respondent was notified to defend that suit as far as we see.

The authorities seem to settle that "where an

agent who is acting in good faith and without fault in proper service of his principal, is subjected to expense or is sued on a contract made by him, or for an act done pursuant to his authority, the principal is bound by law to indemnify and reimburse him for the expense": Wait's Act. & Def., vol. 1, 272. Citing *Powell* v. *Trustees of Newburg*, 19 John., 284; *Howe* v. *Buffalo, New York & Erie Railroad Company*, 37 *N. Y.*, 297; 1 Lansing R., 147; 1 Conn. R., 519; 3 Burney R., 295.

This conceded, there can be no doubt the complainant has incurred the loss by reason of his having acted as the agent of respondent, and that he has acted in perfect good faith we can not doubt, and in pursuance of his authority. It follows the chancellor erred in dismissing the bill, and the Referees report correctly in favor of complainant. It would be a hard case indeed if an innocent agent should have to bear the loss in such a case incurred without compensation and solely for the accommodation of his friend.

Decree accordingly with costs.