## THE FIRST NATIONAL BANK OF CHICAGO

### v.

## DANIEL K. TENNEY ET AL.

*Agency—Duty of Principal to Indemnify Agent for Expenses and Services—Right of Agent to Protect Himself Against Liability.*

1. A principal is bound to indemnify his agent against the consequences of all lawful acts done by him *bona fide* in pursuance of the authority conferred.

2. When an agent is sued for an act done in pursuance of his employment, he is not bound to let judgment go against him, but may defend and recover from his principal, the expenses of a defense *bona fide* made; he may also prosecute an appeal from an adverse judgment.

[Opinion filed January 14, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. S. P. McCONNELL, Judge, presiding.

In May, 1876, the John B. Jeffery Printing Company owed the First National Bank of Chicago $25,000, for which the bank held its note. The bank also held as security for this note, two judgment notes of the company aggregating $40,000, the property of Emma J. Jeffery, who had indorsed them to the bank to help the company. Emma Jeffery was the wife of John B. Jeffery, the president of the printing company. She also held other judgment notes of the company. A few months previous she had retained appellees, plaintiffs below, to look after her interest in case the printing company fell into financial troubles. She had done this because of threats a stockholder was making against the company. About this time Daniel K. Tenney, one of the plaintiffs, had come to an understanding with Gage, the vice-president of the bank, that he, Tenney, should keep the bank informed and, in respect to its claim against the printing company, act for it as well as for Mrs. Jeffery. Shortly after this Tenney became satisfied that immediate action was necessary to protect the bank and

First National Bank v. Tenney.

Mrs. Jeffery. He told Gage what he thought, who agreed with him and gave him both the bank's note and the two notes of Mrs. Jeffery which the bank held as collateral, instructing him to enter judgment on the bank's note first in order, and to have the judgments entered on Mrs. Jeffery's two notes immediately assigned to the bank to be held as collateral, as the notes had been. It was also agreed between Tenney and Gage that he, Tenney, should have the bank's judgment entered in his, Tenney's, name. Tenney did as he was directed, the first judgment being in Tenney's name on the bank's note for $25,170.50; next two judgments in favor of Mrs. Jeffery, aggregating about $40,000, on the notes which the bank had held as collateral; a third judgment was entered in favor of Mrs. Jeffery for about $11,000; another judgment in favor of Burr Robbins for $5,000, and last one in favor of the W. O. Tyler Paper Company for about $23,000. All these judgments were obtained May 19, 1886, by the plaintiffs, as attorneys for the respective judgment creditors. Executions on the bank or Tenney judgment, and on the first two of Mrs. Jeffery's, were levied at once on the tangible assets of the company, and on the next morning, in the Superior Court, creditors' bills were filed, based on the other judgments, and a receiver for the company was appointed. On the first of June thereafter, the J. W. Butler Paper Company filed its bill in the same court, making the company, the bank, D. K. Tenney, the other judgment creditors, the sheriff, the receiver and others, parties defendant, charging that the judgments entered on May 19th were in pursuance of a fraudulent purpose of John B. Jeffery to defraud the complainant and other creditors, and to wreck the company; that Tenney's judgment was held for the use of the bank, and that he and his partners were attorneys for John B. Jeffery and the printing company, and had been employed by Jeffery to carry out his wicked schemes; also alleging that the judgments in favor of Mrs. Jeffery and Robbins were without consideration. On this bill, the sheriff was temporarily enjoined from selling under the execution. The judgment creditors, Tenney and the bank answered, denying the fraud charged, etc.

In July, by order of the Superior Court, in the creditor's suit of Emma J. Jeffery, the receiver sold the tangible assets to D. K. Tenney for $75,000, as trustee for the judgment creditors; which sum was applied, under the order of the court, to the extinction of the bank or Tenney judgment, and the first two of Mrs. Jeffery's, and in a partial payment of Mrs. Jeffery's third judgment. The order required that the judgment creditors should give bond to repay the money so received in case the court should ultimately decree the repayment, and this bond in the case of the Tenney judgment was given by the bank as the real owner of the judgment. A like sale was afterward made of the accounts, also to Tenney, trustee, and payment was made by applying the price on the remaining judgment. Tenney then advised the organization of a new corporation to acquire the plant, good will, etc., of the old one by purchase. This was done, under a plan devised by a Mr. Cothran. Tenney's connection with the reorganization seems to have been merely to transfer the assets which he had purchased as trustee, as directed to do by the *cestuis que trust.*

The bill of the Butler Paper Company having been taken by change of venue to the Circuit Court, that court on the 18th of April, 1889, entered a decree finding, among other things, that the judgments of May 19, 1886, were entered in the execution of a fraudulent conspiracy to wreck the printing company, and to defraud creditors other than the judgment creditors; and that the conspirators were John B. Jeffery, George T. Pomeroy, Daniel K. Tenney, Emma J. Jeffery, and the officers of the Tyler Paper Company. It further decreed that Daniel K. Tenney, Emma J. Jeffery, Burr Robbins and the Tyler Paper Company, should respectively pay to the receiver the amounts which had been applied on their respective judgments in the receiver's sale of the assets to Tenney, trustee. The court in its decree reserved for further consideration, upon testimony to be thereafter taken, the question of the right of the judgment creditors to share as general creditors in the distribution of the funds which they were required to pay into court.

First National Bank v. Tenney.

Immediately upon the rendering of this decree of the Circuit Court, the question arose, at least in the minds of D. K. Tenney and the officers of the bank, what the bank would do in order to protect Tenney from the decree entered against him. A petition for a rehearing was filed by the bank and Tenney, supported by the affidavits of Mr. Tenney and Mr. Gage, in which petition it was stated that the rights and interests of the bank and Tenney were greatly prejudiced by said decree, and they prayed for a rehearing as to so much of the decree as related to the judgment of the bank entered in the name of Tenney, and that the decree to be entered should preserve the rights of the bank to a prior lien upon the property in question. The petition for rehearing was denied. An appeal from said decree was prayed by the First National Bank, by D. K. Tenney, the Tyler Paper Company, Burr Robbins, Emma J. Jeffery, and John B. Jeffery. Although the bank joined in the petition for a rehearing and prayed an appeal, it took pains to have stated in open court, upon the prayer for an appeal, that it found no fault with the decree of the Circuit Court; and the bank, after considerable talk by its officers with Mr. Tenney, declined to prosecute the appeal, but expressed a willingness that Tenney should on his own account do whatever he saw fit to relieve himself from the liability imposed upon him by the decree of the Circuit Court. Tenney accordingly prosecuted his appeal to the Appellate Court, and in that court the decree of the Circuit Court was reversed, with directions to dismiss the bill as to Robbins and Tenney at the cost of the Butler Paper Company. This suit was brought to recover for the services and expenses of Tenney in procuring a reversal of the decree against him; it being by stipulation agreed that the defendant waives any objections that some of the items in the bill for which this suit was brought should have been sued for in the name of D. K. Tenney individually, and also that some of the items are for services and expenses incurred after the bringing of this suit.

Mr. ORVILLE PECKHAM, for appellant.

No assumpsit will be implied against the express declaration of the party to be charged.  Whiting v. Sullivan, 7 Mass. 107;  Jewett v. Inhabitants of Somerset, 1 Me. 125; Metcalf on Contracts, 9; 1 Story on Contracts, § 12;  Child v. Morley, 8 Durnford & East, 610.

In the Massachusetts case cited, the facts were that the plaintiff sold a horse to the defendant which turned out on trial not to be all that the plaintiff had represented it to be: The defendant thereupon returned it to the plaintiff with a letter explaining that he did so because he had been cheated in the purchase.  After reading the letter, the plaintiff significantly remarked to the defendant's messenger : " So, Mr. Sullivan has sent me his horse to keep."  This view the messenger repudiated, saying, " No, he has returned your horse to you and will have nothing further to do with him."  The plaintiff kept the horse for a year, and then sued for its keep, and contended that defendant had no right to disclaim the horse, and therefore continued to be its owner, and ought to pay for keeping it.  Plea, *non assumpsit.* Plaintiff got a verdict, which the Supreme Court set aside.

The court, speaking by Chief Justice Parsons, says :

"As the law will not imply a promise where there was an express promise, so the law will not imply a promise of any person against his own express declaration, because such declaration is repugnant to any implication of a promise.   *   *   *   In this opinion our brother Parker, before whom the cause was tried, upon consideration of the case, fully concurs. It was imprudent in the plaintiff to take the horse if he was determined to hold the defendant to his bargain.   Perhaps he might think the defendant's right to rescind doubtful, and might choose to keep the horse until that question was decided, and if it should be decided against him, then he would be keeping his own horse, otherwise he might attempt to charge the defendant.  On this view the plaintiff must fail; for whether the defendant impliedly promised or not, at the return of the horse, could not depend on a subsequent event.  He must have impliedly promised when the horse was returned, or never after.  Such a contingent agreement

First National Bank v. Tenney.

might have been expressly made by the defendant, but can not be implied."

The latter part of the passage quoted has a special application. The learned judge who gave judgment against us in the Circuit Court did so on the ground that the result of Tenney's appeal tested the bank's liability for the expense of it; since this court had reversed Judge Tuley, the bank was liable, he held; if it had affirmed him, the bank would not have been liable. This view had not been advanced or discussed by anybody on the trial. We shall refer to it again.

In the Maine case certain commissioners for the laying out of a public road applied under the law to the Court of Sessions of the county to have the same located, etc. The court acted favorably on their petition, but adjudged that the work should be done at the expense of the petitioners, and in the warrant issued to the committee appointed to do the work this condition was repeated. When the work was done the petitioners refused to pay the expense of it, on the ground that it was a public service and chargeable to the county. Suit was thereupon brought against the county. On the trial it was insisted, among other arguments, that it was the duty of the county to bear public expenses of this character, and that the Court of Sessions transcended its powers under the law in fixing the condition upon its judgment.

The Supreme Court, by Mellen, C. J., says:

"The single question is whether this action can be maintained; and we are all very clear that it can not. No express promise is pretended to have been made. Does the law imply one? In a declaration upon a promise on a consideration which is past, it is always necessary to allege that the act performed, or sum paid, was performed or paid at the request of the defendant. 1 Chitty, 297; Livingston v. Rogers, 1 Caines, 583. But in the present case all implication is rebutted by the adjudication and the warrant, in both of which it is declared that the petitioners—not the county—are to defray the expense. Instead of a request there is an express refusal, and notice of this refusal given to the plaintiffs before they entered on the service. They were under no obligation to

proceed until their fees and expenses were paid to them, and if they have imprudently given credit it is not the fault of the county. The principle of Whiting v. Sullivan (*supra*) is sound and familiar. The law will not imply a promise against the protestation of him who is attempted to be charged with it."

The innocent principal is not bound to indemnify the innocent agent unless the business of the agency was the proximate cause and not merely the occasion of the loss or damage. Story on Agency, Sec. 341; Powell v. Trustees of Newberg, 19 Johnson, 283; Ruffner v. Hewitt, 7 W. Va., 585, 634; Corbin v. Am. Mills, 27 Conn., 277; D'Arcy v. Lyle, 5 Binney, 441; Am. Lead. Cas., 718, *726.

In Powell v. Trustees of Newberg, 19 Johnson, 283, the trustees of a village had been sued for acts done in their official capacity which were alleged as done maliciously and illegally. On the trial they had been found not guilty, and had got judgment in their favor, but having incurred expense in their defense against the suit, they sued the village for reimbursement. They were allowed to recover, very justly, since their outlays pertained strictly and undoubtedly to the service which they owed and were rendering to the village. In deciding the case, the court (Spencer, C. J.) refers to a number of cases where the principle involved there and here was applied; among others, to D'Arcy v. Lyle, 5 Binney, 441, where (to quote from the opinion in Powell v. Trustees, etc.) " Ch. J. Tilghman expressed his approbation of the law as laid down by Heineccius, b. 13, pp. 269, 270, and 2 Ersk. Inst. 534, that damages incurred by an agent or in the course of the principal's affairs, or in consequence of such management, were to be borne by the principal. It was admitted that when an agent, on a journey on business of his principal, was robbed of his own money, the principal would not be answerable, because carrying his own money was not necessarily connected with the business of his principal. So, if he received a wound, the principal is not bound to pay the expense of the cure, for it was the personal risk of the agent."

Mr. WILLIAM E. CHURCH, for appellees.

Of course it will be conceded that the decree constituted no adjudication of the rights of these parties as between themselves; it did not undertake to adjudicate them, nor could it have done so. Parties to a judgment are not bound by it in a subsequent controversy between themselves unless they were adversaries in the original action. Freeman on Judgments, Sec. 158; Graham v. R. R. Co., 3 Wall. 704.

A rule of law which pervades the whole law of principal and agent, is that the principal is bound to indemnify the agent against the consequences of all acts done by him in due execution of the authority conferred upon him. When, in obeying the orders of or performing duties for his principal in good faith, the agent incurs expense or liability, or is compelled to pay damages to third parties, the principal is bound to indemnify and reimburse him. Story on Agency, Sec. 339; D'Arcy v. Lyle, 1 Am. Leading Cases; Hare & Wallace, *p. 711; 5 Binney (Pa.), p. 441; Stocking v. Sage, 1 Conn. 519; Greene v. Goddard, 9 Metcalf (Mass.), 213–222; Powell v. Trustees of Newburgh, 19 Johns. p. 284; Howe v. R. R. Co., 37 N. Y. p. 297; Frixione v. Tagliaferro, 34 Eng. Law and Eq. 27.

The general doctrine is stated in the section -cited from Story on Agency, and finds ample illustration in the cases cited.

In D'Arcy v. Lyle, the plaintiff as agent of defendant had recovered by judicial process, at St. Domingo, certain goods owned by defendant, which he had then sold, duly remitted the proceeds and closed his agency. Subsequently by a tyrannical and arbitrary exercise of the despotic power of the President of Hayti, under grave peril threatened against the court, the plaintiff and his attorney, the plaintiff was compelled to refund the value of the goods to a third party who had originally claimed an attachment lien upon them. To cover the amount so paid the suit was brought.

The court say, among other things: "The defendant appointed the plaintiff his attorney to settle and collect a debt in a barbarous foreign country. The plaintiff has transacted

that business with fidelity and care and remitted the proceeds to his principal. He risked his life in defense of the interests of his constituent, under the imperious mandate of a capricious tyrant holding the reins of government. He has since been compelled, by a mockery of justice, to pay his own moneys for acts lawfully done in the faithful discharge of his duties as an agent, and I have no difficulty in saying that of two innocent persons, the principal and not the agent should sustain the loss."

From Greene v. Goddard, 9 Met. 212, we cite: "Where an agent, in pursuing the instructions of his principal and acting within the scope of his authority, becomes personally liable for the performance of the contract he makes for his principal, and without which personal liability the orders of the principal can not be executed at all, or not so well executed, and this is known by the principal at the time of giving his instructions and creating the agency, if a loss occur to the agent, it is most clear that he can look to the principal for indemnity for the damage sustained by him.

Two other most instructive and pertinent cases are the following:

Howe v. R. R. Co. was a case where a railroad conductor, acting in obedience to orders from the company, refused to accept from a passenger a certain ticket, and, on the passenger's refusing to pay fare, stopped the train and put him off. The passenger sued the conductor and recovered a judgment which, after being arrested on a *ca. sa.*, the conductor, Howe, settled and brought suit against the railroad company for reimbursement. The company had employed and paid attorneys and counsel to defend the suit against the conductor but declined to pay the judgment. The court say:

"Whether the judgment recovered against him (Howe) was right or wrong, is a question which does not arise on the present appeal. If it was right, the defendant (the railroad company) should have paid it, without exposing him to imprisonment for an act done in good faith, in the interest and by the orders of the company. If it was wrong, the error should have been corrected by a review of the judgment.

The appellant chose to abandon the defense, and permit him to be the sufferer. The court below was right in holding that he was entitled to redress. There is an implied obligation on the part of the principal to indemnify an innocent agent for obeying his orders, when the act would have been lawful in respect to both, if the principal really had the authority which he claimed.   *   *   *   It appeared, presumptively from the record, that the judgment was rendered on the ground that the removal was unlawful."

In Frixione v. Tagliaferro, cited in a note to the cases of D'Arcy v. Lyle, and Bradford v. Kimberly, 1 Am. L. Cases, Hare & Wallace, 5 Ed., top page 869, a case where an agent was suing to recover indemnity for a judgment recovered against him in defense, the court say, as there reported:

"It matters not whether the judicial sentence under which an agent be made to pay be right or wrong; if the agent has hereby sustained a loss on behalf of his principals, they must bear the loss. All that he need show is that the loss arose from the fact of the agency, that he was acting within the scope of his authority, and that the damage was not attributable to any fault of his own. Neither is it important that he exceeded in his instructions if the excess was expressly waived by his principal."

A principal can not adopt a part of the agent's act without adopting all, and by accepting the benefits, he ratifies the act and adopts as his own all the means and instrumentalities resorted to by the agent in acquiring them. And when it is claimed by the principal that the agent transcended his authority, if he do not promptly repudiate the act on being informed of it, he will be held to have ratified it by implication. Farmers Loan and Trust Co. v. Walworth, 1 N. Y. 433; Crans v. Hunter, 28 N. Y. 389; Fowler v. Gold Exch. Bank, 67 N. Y. 138; Searing v. Butler, 69 Ill. 575.

The case of Fowler v. Bank was one presenting questions similar to those which might have arisen if Tenney had retained in his hands the property of the Jeffery Printing Company, claiming indemnity therefrom for his losses and expenses, and the bank were endeavoring to compel him to

pay the amount of its claim.    The court, after showing that
the only claim which the plaintiff in that case had to the
money in controversy, rested upon the fact that in the trans-
actions which produced it, defendant acted as its agent, sus-
tained the right of defendant to indemnity and laid down the
rule in such cases substantially as we have stated it in the first
clause of our proposition.

WATERMAN, P. J.    One of the primary rules of the law of
principal and agent, is that the principal is bound to indem-
nify the agent against the consequences of all lawful acts by
him *bona fide* done in pursuance of the authority conferred.
Evans' Newell on Agency, 353; Meechem on Agency, Sec.
653; Story on Agency, Sec. 339; Stocking v. Sage, 1 Conn.
519; Greene v. Goddard, 9 Metcalf, 212–222; Perry on Trusts,
Sec. 910.

Counsel for appellant do not contest the existence of this
rule; their position is that the judgment against Tenney was
rendered, not because of his relation to, or anything he did
for, the bank, but on account of his being the attorney of
Mrs. Jeffery, and the opinion entertained by the chancellor
that he was the attorney of Mr. Jeffery.    Counsel say: "The
conspiracy which Judge Tuley thought he saw, was a Jeffery
affair, not a bank affair."    "Judge Tuley thought he saw a
group of conspirators at work."    "The bank was not there.
Jeffery, Mrs. Jeffery, Pomeroy and representatives of the
W. O. Tyler Paper Company were all there; and Tenney was
there too, helping the others, who were his clients.    The
group was really innocently engaged, but Judge Tuley
denounced them all as wicked plotters, and they suffered in
consequence.    Why does Tenney demand that the bank shall
indemnify him for this?"

Counsel also say that Tenney and others were suspected of
a fraudulent conspiracy and consequently were punished
together; that the bank was neither suspected nor punished.
The decree hardly sustains this view.    The decree found that
the material allegations of the supplemental bill were sus-
tained by the evidence.    The supplemental bill alleges that in

the proceedings for the formation of the Jeffery Printing Company (the new company) when it became necessary to procure subscriptions for the $150,000 capital stock, Lyman J. Gage, vice-president of the bank, with intent to aid in the consummation of the fraudulent scheme aforesaid (*i. e.*, to wreck the John B. Jeffery Printing Company and defraud its creditors), entered, or pretended to have entered, upon the books of the bank a credit or credits as for sums of money to the aggregate amount of $150,000, etc.; and further alleges that the whole scheme and transaction (the formation of the new company) from beginning to end was part of the fraudulent schemes contrived as aforesaid by John B. and Emma Jeffery and Daniel K. Tenney, each of the persons participating in these transactions having full knowledge and notice of the fraudulent scheme.

If the Circuit Court, in the decree by it rendered, had been content to merely speak of Tenney as a conspirator who had joined with Jeffery in the perpetration of what the court thought a fraudulent transaction, and had rendered no decree against him, Tenney could not have required the bank to remove the stigma from his name or pay damages for his injured reputation. The indemnity which a principal is bound to afford an agent, does not extend to giving compensation for odium he may incur, or unjust things said concerning his conduct in transacting the business he has been set to do.

The Circuit Court, however, did not stop with merely characterizing Tenney's conduct; it decreed that within thirty days he pay to the receiver it had appointed, the sum of $25,370.50, as being the part of the $75,000 bid by him upon the tangible assets of the John B. Jeffery Printing Co., which (in the language of the decree) "he pretended to apply on the above mentioned judgment in his own favor," with interest at six per cent per annum, "amounting, principal and interest, to $29,383.64."

The judgment alluded to was that of the bank; there was no pretense about applying the $25,307.50 on that judgment; he actually did so apply it with the knowledge of and by arrangement with the bank. It was to obtain relief from this decree,

which became at once a lien upon his realty in Cook county, under which his personal property might have been seized and sold and by which his personal freedom was endangered (National Park Bank v. Halle, 41 Ill. App. 19), that he prosecuted an appeal. The court, concluding that he was a conspirator, did not decree that he make good whatever the complainants had lost by reason of his acts as such, or order him to pay what Mrs. Jeffery or any of his clients, save the bank, had obtained upon the judgments, by them, through his instrumentality, entered. He was held bound to pay simply what the bank, through him as its attorney and trustee, had received. It is clear, therefore, that because of his connection with and agency for the bank, this personal decree was entered against him. Thus held, the bank was bound to indemnify him.

It may be true, as is urged, that the bank had no need for his services; that its security was so ample and its position so secure that it could have done without his aid. The rule is not, as would seem to be suggested, that a principal is bound to indemnify only such agents as he necessarily employs, or for such acts as they necessarily do in his service; he is bound to indemnify whatever agents he sees fit to employ, for all authorized and lawful acts, *bona fide* done in his business.

It is, therefore, quite immaterial if Tenney, as the attorney of Mrs. Jeffery, had more occasion to apply to the bank than the bank had to employ him, or that none of its interests demanded that its judgment should be entered in his name; it did employ him; it did authorize the entry of its judgment in his name; it did empower him to purchase the tangible assets as its trustee and to cancel its judgment by such purchase, and finally it received from him such assets and actively participated in the creation of a new corporation to which these assets were transferred. Tenney was held for the very amount it, through his agency, received, and it can not be permitted to now say that it never needed to employ him at all.

This conclusion is not reached, solely because this court set aside the decree of the Circuit Court, although the fact that such reversal inured to the benefit of the bank, and it

enjoys the fruits of the appeal Tenney prosecuted, is entitled to consideration. The right of an agent to indemnity for *bona fide*, lawful, authorized acts, is the same as against those which bring no fruit to the principal or cause him loss, as against those from which he receives a rich reward. The question here presented is not how the Circuit Court regarded what Tenney did for the bank, but were such acts lawful, authorized, done in good faith. It is urged that a principal has the right to take the consequences of a decree against its agent for acts done in its behalf, and is not bound to appeal therefrom, and that this action, being for the costs and expenses of the agent's appeal, must fail.

The principal is not bound to appeal from a decree rendered against his agent; he may submit to it, but he is bound to indemnify his agent, and this means something more than that after the agent has paid the judgment, or under it been stripped of his goods by due process of law, that the principal will then afford remuneration. The principal may pay if he will, but he can not lie supinely by and let his agent suffer the consequences of a decree which he, as principal, is legally and morally bound to pay. Neither is the agent bound to wait indefinitely before he takes measures to protect himself; having notified, if practicable, the principal of the situation, he may proceed to measures for his own and his principal's relief, measures which in the case of an appeal taken, are necessarily in the interest of the principal and tend to his exoneration. When sued for an act done in pursuance of his employment, he is not obliged to let judgment go against him, but may defend and recover the expenses of a defense *bona fide* made. Howe v. Buffalo, N. Y. & Erie R. R. Co., 37 N. Y. 297; Stocking v. Sage, 11 Conn. 519–522; Maitland v. Martin, 86 Penn. St. 120; Frixione v. Tagliaferro, 34 L. & Eq. 27; Powell v. Trustees of Newburgh, 19 Johns. 283; Saveland v. Green, 36 Wis. 612–617.

In the present case, by virtue of the statutes of this State, Sec. 1, Chap. 77, all the real estate Tenney had in the county of Cook was fastened upon by the decree of the court. The obligation of the bank and the right of Tenney were clear.

He proceeded by appeal to remove the decree and thus re-
lieved the bank from its obligation to pay; for his proper and
reasonable costs, expenses and services in so doing he is enti-
tled to be remunerated. No complaint is made as to the
amount of the judgment rendered in this case, and it will be
affirmed.

*Judgment affirmed.*