REINER HOCH v. DULUTH BREWING & MALTING
COMPANY.[1]

January 13, 1928.

No. 26,420.

**Agent's complaint for reimbursement of expenses incurred for principal insufficient.**

Over 20 years ago plaintiff, the president and manager of defendant, to secure its debt from a customer, accepted in his name title to some lands and two years thereafter, when the debt was sufficiently reduced, reconveyed to the customer. Many years later the United States brought suit for a large sum against the customer and others whose names appeared in the chain of title, including plaintiff, charging conspiracy to defraud the government of its land. Plaintiff defended successfully, and sues defendant for reimbursement. It is *held*:

The complaint fails to show the expenses incurred resulted proximately from the execution of the agency or trust, but does show them to be due to the independent and unexpected wrongful act of the government, for which this defendant is not responsible.

Corporations, 14a C. J. p. 814 n. 98.

Action in the district court for St. Louis county to recover expenses incurred by the plaintiff in defending an action instituted against him by the United States. There was a demurrer to the complaint, and plaintiff appealed from an order, Kenny, J. sustaining it. Affirmed.

*Burdick & Campbell,* for appellant.
*Baldwin, Baldwin, Holmes & Mayall,* for respondent.

HOLT, J.

Plaintiff appeals from the order sustaining a demurrer to his complaint. The main facts alleged in the complaint may be summarized thus:

[1]Reported in 217 N. W. 503.

From 1900 to 1922 plaintiff was the principal stockholder, the president, the general manager, and a member of the board of directors of the defendant, a corporation engaged in the manufacture and sale of malt beverages; that T. F. Mackmiller, a customer of defendant, was indebted to it in a large amount in 1905 and unable to pay the same; that as active manager of defendant's business plaintiff secured this indebtedness by obtaining a conveyance from Mackmiller to plaintiff personally of sundry tracts of land in Oregon and of shares of stock in a Wisconsin corporation; that in 1907 Mackmiller had so paid off and reduced his indebtedness to defendant that plaintiff reconveyed the Oregon lands, with the consent of defendant, to Mackmiller and also reassigned and delivered to him the said shares of stock; that plaintiff took the title to said property and held the same solely for the benefit of defendant; that in respect to taking such title, holding the same, and turning it back to Mackmiller plaintiff acted upon the advice of defendant's attorney; that in 1922 the United States discovered that certain of the lands above referred to had been held by plaintiff and, claiming there had been fraud in securing patent thereto, thereafter in 1924 brought suit against Mackmiller, this plaintiff, and various persons who appeared in the chain of title to said lands, for $160,000 damages, charging fraud and conspiracy against the defendants therein and setting out various acts of conspiracy; that plaintiff employed counsel to appear and defend him in the suit; that the defense succeeded and judgment of nonsuit was entered against the United States; that in expenses and attorneys' fees plaintiff therein paid out $7,920.23, for which judgment is asked against defendant. There is an allegation that defendant was fully advised of the commencement of the suit, "and at no time did the said defendant offer any assistance in any manner whatsoever aside from its records in its office." No request to assume the defense is alleged.

Since plaintiff in taking and holding title to the Oregon lands acted for the sole benefit of defendant, his principal, it is insisted that this rule is applicable, viz: "Where one is employed or

directed by another to do an act in his behalf, not manifestly wrong, the law implies a promise of indemnity by the principal for damages resulting proximately from the good-faith execution of the agency." Henderson v. Eckern, 115 Minn. 410, 413, 132 N. W. 715, Ann. Cas. 1912D, 989. The same rule applies if plaintiff be regarded as trustee. However, the difficulty with the facts alleged is to find therein any damages resulting proximately from the execution of the agency or trust.

The gist of the action of the United States was conspiracy whereby the government was defrauded of lands. The suit was for damages, and apparently not for the cancelation of the patents. This would involve nothing with regard to the execution of the agency, or of the trust in accepting a conveyance from Mackmiller, or a reconveyance to him. There is no claim that plaintiff, in order to obtain the security from Mackmiller for defendant, had occasion to deal with the government or even to negotiate with the patentee. So it cannot be said or inferred that the suit of the United States grew out of the execution of plaintiff's agency or trust. And certainly there would be no relation between acts of conspiracy antedating plaintiff's endeavors to obtain the Oregon lands as security for Mackmiller's debt. In the complaint there is nothing to indicate any attempt to defraud the government after Mackmiller transferred to plaintiff.

In the cases cited by appellant from this court there was a proximate relation between the execution of the agency or the administration of the trust and the alleged acts for which the third party sought to hold the agent or trustee personally liable, and in defending against which expenses were incurred or damages paid which the principal or trust estate should stand. Guirney v. St. P. M. & M. Ry. Co. 43 Minn. 496, 46 N. W. 78, 19 A. S. R. 256; Henderson v. Eckern, 115 Minn. 410, 132 N. W. 715, Ann. Cas. 1912D, 989. Of course, an agent or trustee is entitled to reimbursement for expenses incurred in the proper performance of the agency or the execution of the trust, as held in the cases cited by appellant of Seibert v. M. & St. L. Ry. Co. 58 Minn. 58, 57 N. W. 1068; Trues-

dale v. Philadelphia Tr. S. D. & Ins. Co. 63 Minn. 49, 65 N. W. 133; Wilson v. Welles, 79 Minn. 53, 81 N. W. 549. It may also be said that in the suit of the United States against plaintiff and others the charge is conspiracy to defraud the government of its land. The complaint herein does not allege the necessity of doing any tortious act, nor any knowledge on the part of defendant that it need be done, nor that plaintiff, not knowing a necessary act connected with the receiving of the Oregon lands from Mackmiller to be tortious, was directed by defendant to perform it, and in good faith complied.

The allegation in the instant complaint is quite different from that involved in Hoggan v. Cahoon, 26 Utah, 444, 73 P. 512, 99 A. S. R. 837, relied on by appellant; so also are the facts in First Nat. Bank v. Tenney, 43 Ill. App. 544, upon which the agent or attorney was allowed reimbursement upon the theory stated in the syllabus that the "principal is bound to indemnify his agent against the consequences of all lawful acts done by him *bona fide* in pursuance of the authority conferred."

Story, Agency (9 ed.) § 341, states the rule to be that the principal is liable to the agent "only for such losses and damages as are direct and immediate, and naturally flow from the execution of the agency. If, therefore, the losses or damages are casual, accidental, oblique, or remote, the principal is not liable therefor. In short, the agency must be the cause, and not merely the occasion, of the losses or damages, to found a just right to reimbursement." Mechem, Agency (2 ed.) § 1603, limits the obligation to indemnify "the agent for such losses as flow directly and immediately from the very execution of the agency," and in his work, *Outlines of Agency* (3 ed.) § 422, the further limitation is made that reimbursement does not "extend to liabilities or losses caused solely by the agent's own misconduct or default; nor to those which are in no way the result of the execution of the agency, or which are caused by independent and unexpected wrongful acts of third persons for which the principal is in nowise responsible." The last statement applies in this case. The complaint shows the expenses in defending the suit brought by the government were caused by

the independent and unexpected wrongful act of the United States, for which the defendant was in nowise responsible.

We have been referred to no case like or even nearly approaching the one before us. But the most helpful appears to be Du Puy v. Crucible Steel Co. (D. C.) 288 F. 583, where plaintiff was indicted, tried and acquitted of conspiracy to defraud the government in making up, as an officer of the defendant, its income tax statement. He sued to recover the disbursement in making his defense. Although it was there alleged that it was plaintiff's duty as general manager to make the return and in so doing he followed the advice of the defendant and acted in good faith and was not guilty of conspiracy, he was nevertheless prosecuted, and the court held the complaint failed to show a right to reimbursement. The authorities are reviewed in the decision.

In our opinion the learned trial court ruled correctly.

The order is affirmed.