MRS. LEE J. CARSEY v. FIRST NATIONAL BANK OF CLARKSVILLE.

Middle Section. December 6, 1929.

Petition for Certiorari denied by Supreme Court, April 5, 1930.

138

A. B. Broadbent, of Clarksville, for appellant, Bank.
Dancey Fort, of Clarksville, for appellee, Mrs. Carsey.

CROWNOVER, J. This was a suit by Mrs. Carsey to recover $202.54 which had been paid out of her money on deposit, without her consent, by the bank on check drawn by the president of the bank, payable to Joe B. Palmer & Co., brokers, who had been employed by the bank at the instance of Mrs. Carsey to sell seventy-six shares of her stock in another corporation. The bank answered and set up the defense that Mrs. Carsey had authorized the bank as her agent to make sale of said stock through these brokers, and after they had made the sale she refused to forward said stock that had been sent to her for endorsement but had sold it to another through a Florida bank for a higher price, and after she breached the contract of sale the brokers were forced to go into the market and buy the stock at a loss of $202.54 in order to comply with their contract of sale made at her instance, and as the bank as her agent had authorized the sale by said brokers, it applied this amount of her deposit to the payment of the loss by check as alleged; but the bank did not plead set-off or file a cross-bill asking for any affirmative relief.

The Chancellor held that Mrs. Carsey had made a valid contract with the bank to sell said stock and had breached the same, but as there was no proof of the market price of the stock when the con-

tract was breached the bank was entitled to recover only nominal damage, which was fixed at $5, and he rendered a decree in favor of Mrs. Carsey for the balance together with interest from the filing of the bill, which amounted to $224.20. Both sides appealed and have assigned errors. Mrs. Carsey by her assignments of error insists that the Chancellor erred in holding that she had breached the contract and in holding that the bank could appropriate her money on deposit to the payment of unliquidated damages to itself or other parties. The defendant bank assigned six errors, all of which went to the proposition that the Chancellor erred in not holding that the defendant bank was entitled to the amount of this check as damages and that it had a right to appropriate the amount by check to the brokers for the loss sustained, insisting that it was agent for Mrs. Carsey in making the sale.

The facts of the transaction are: On or about August 12, 1925, Mrs. Carsey was the owner of seventy-six shares of stock in the Erie Railroad Corporation. She was also a depositor and customer of the First National Bank of Clarksville. On the above date she called on the President of the said Bank and requested it to sell said stock for her at $36 per share, that is, that the stock be sold when the market reached $36 per share. It was the custom for the Bank to sell stock owned by its customers upon request. It had once made a sale of stock for Mrs. Carsey. On the same date the President of the Bank placed an order with Joe B. Palmer & Co., brokers. Shortly thereafter Mrs. Carsey carried the certificates of stock to the bank, but, finding the president out, she left them with another bank official, who failed to notify the president.

On September 29, 1925, the bank cancelled this order of sale with the brokers, without notice to Mrs. Carsey. About the first of October, Mrs. Carsey went to Florida to spend the winter. She had received no communications from the bank in regard to the stock. Under date of October 29, 1925, she wrote the bank, calling its attention to the market price, stating that the stock had passed the 36 mark, and asked if her stock had been sold. On November 2, the president answered this letter, stating that the bank did not have her certificates and had, therefore, cancelled the order. He requested that she wire on receipt of the letter whether she wished the stock sold at 36, and that she endorse the certificates and forward them by registered mail. On November 3, he again wrote Mrs. Carsey. In this letter he explained that he had found the bank had the certificates of stock and that he was sending them to her for her endorsement. In both letters he states that on receipt of the certificates properly endorsed he will place an order for sale, and sell same.

On November 4, he wired Mrs. Carsey: "Erie closed 36¼ today. Shall we sell." Mrs. Carsey answered by wire on same date: "Sell

Erie 36¼ or more.'' Mrs. Carsey says that she received the telegram and replied before she received the two letters. She takes the position that after she received these two letters, both stating that the bank would place an order .for the sale of the stock after it received the certificates properly endorsed, she concluded that no sale had been made, and that, therefore, she would keep the stock and sell it there as she was afraid that it would decline in price before the certificates reached the bank. She says she notified the bank by letter to this effect. but the bank did not receive the letter, and she kept no copy of same. She says she conferred with the bank in DeLand, Florida, about the sale of the stock and was advised that she could sell it there. Hence, she sold it for 37 per share.

On November 12, the First National Bank of Clarksville again wrote Mrs. Carsey that if she wished it to sell the stock at 36 per share she must immediately send the certificates. She made no reply to this letter. On November 13, the bank wired Mrs. Carsey: ''Sold Erie stock. Please endorse certificates and forward immediately.'' Mrs. Carsey was out of the town and did not receive the telegram until November 18, and on that date she answered by letter that she had sold the stock in Florida for 37 per share.

On November 29, 1925, the bank again wrote Mrs. Carsey, advising her that it had sold the stock on November 13, at 36¼ in accordance with her instructions by wire under date of November 4; that it had received no instructions to cancel the order; that it would be necessary to purchase seventy-six shares of stock on the market in order to make delivery of the stock it had sold through the brokers; and that she would have to pay the difference between the market price and 36¼, in the event the stock had advanced in price, and it asked for her advice. She did not reply to this letter, and the Bank on December 4 and again on December 10 wrote her about the sale of the stock and stated that unless it heard from her it would buy the stock on the market. She ignored all these letters. On December 14, the bank wrote her that it had purchased the shares of stock on the market at 38⅜ and had sustained a loss of $202.54 which it asked her to pay. But receiving no reply from her, the president wrote a check on her account, payable to Joe B. Palmer & Co., for $202.54, and marked on it, ''Balance settlement on Erie R. R. stock transaction, '' and charged the same to her account. When the bank book was balanced Mrs. Carsey learned for the first time that they had charged this sum to her account and she demanded that it be refunded. On the Bank's refusal she brought this suit.

The bank insists that it made a valid contract with her to sell the stock and in pursuance of this agreement it employed Joe B. Palmer & Co. as brokers to sell the stock, relying upon the contract as set out in the telegrams; the brokers contracted to sell the stock for

36¼ and were under a legal obligation to deliver the stock; that she breached the contract and it was forced to go into the open market on December 14 and purchase seventy-six shares at 38⅜, which was the then market price, and actually lost $202.54, and relies upon the proposition that:

"Where an agent who is acting in good faith and without fault, in proper service of his principal, is subjected to expense, or is sued on a contract made by him, or for an act done pursuant to his authority, the principal is bound to indemnify and reimburse him for the expense." Clark v. Jones, 84 Tenn., 351; Mechem on Agency, sec. 1603; DuPuy v. Crucible Steel Co., 288 Fed., 586; 21 R. C. L., 834; 24 R. C. L., 405.

Whereas, Mrs. Carsey insists that as the bank had not pleaded set-off and had not asked for affirmative relief by cross-bill, the question of whether and when she breached the contract became immaterial, and that the Bank had no right to appropriate a depositor's funds to pay unliquidated damages.

After an examination of the record we are of the opinion that under the state of the pleadings the questions of whether Mrs. Carsey had breached the contract and whether there was any proof as to the market price of the stock at the time of the breach of the contract, are immaterial. The right of the bank to apply a deposit to an indebtedness due from the depositor, results from the right of set-off, which obtains between persons occupying the relation of debtor and creditor, and between whom there exist mutual demands, and it is familiar law that mutuality is essential to the validity of a set-off, and that in order that one demand may be set off against another, both must mutually exist between the same parties. 3 R. C. L., 591, sec. 219; 7 C. J., 655.

The bank had no right to pay third parties out of depositor's funds without authorization. Grissom v. Bank, 87 Tenn., 350, 10 S. W., 774; 7 C. J., 655.

A bank has no right to pay anyone, even itself, unliquidated damages out of a depositor's funds. Irvine v. Dean, 93 Tenn., 346, 27 S. W., 666; 7 C. J., 655; Tallapoosa County Bank v. Wynn, 173 Ala., 272.

"The claims set off must be certain, i. e. either already reduced to precise figures, or capable of being liquidated by calculation without the intervention of a jury to estimate the sum. And when the claim sought to be used as an offset requires the decision of a jury on the question of negligence before the claim is established, it cannot be offset, even though the amount of the judgment is very clear, provided there should be any judgment in favor of the claim. As where a bond deposited as collateral for a note was lost and in suit by the bank on the note the maker tried to offset the loss of the bond.

"A judgment, or contract claim, that can be sued in debt, assumpsit, or covenant, may be set off. But a demand that must be sued upon in tort, or by bill in equity, cannot be set off." Morse on Banks & Banking, sec. 335.

Clearly the loss, if any, on the sale of the stock, was unliquidated damages, and in no event would the bank have a right to appropriate her funds on deposit in payment of such loss. The brokers suffered the loss, and at the time of the conversion of the funds on deposit the bank had suffered no loss, although it may have been ultimately liable to the brokers, hence, it had no right to appropriate her funds, without authority, to the payment of the claims of a third party, even had the amount been settled.

The bank had no right to appropriate her funds on deposit for any loss that it might have sustained by reason of the breach of the agency contract, because the amount was unliquidated, and it cannot recover for any loss that it might have sustained by reason of the agency, because it did not file a cross-bill or ask for any affirmative relief.

The Chancellor was in error in passing upon the question of whether Mrs. Carsey had breached the contract and in allowing the bank nominal damages, because these questions were not raised by the pleading, and because the bank had asked for no affirmative relief. To this extent his decree will be reversed so as to disallow nominal damages, but will be affirmed in other respects.

It results that all the assignments of error made by the bank will be overruled, and the assignments of error made by Mrs. Carsey must be sustained. A decree for $202.54, together with interest from September 21, 1926, the date of the filing of the bill, together with the costs of the cause including the costs of appeal, will be entered in favor of Mrs. Carsey and against the First National Bank of Clarksville and the sureties on its appeal bond, for all of which let executions issue.

Faw, P. J., and DeWitt, J., concur.