# ROBERT M. ADAMS v. NORTH RANGE IRON COMPANY.[1]

February 23, 1934.

No. 29,730.

*Baldwin, Holmes, Mayall & Reavill,* for appellant.
*Mitchell, Gillette, Nye & Harries,* for respondent.

*HOLT, Justice.*

A demurrer to the complaint was sustained, and plaintiff appeals.

The facts alleged may appear sufficiently for an understanding of the legal question raised from this condensed statement: Plaintiff, D. R. McLennan, and Ward Ames, on and prior to February 4, 1919, were jointly interested in a lease of a tract of land in Crow Wing county, this state, containing iron ore, on which they had done some exploring and drilling; and on the date mentioned they incorporated defendant, assigned the lease to it, becoming the owners of substantially all of its capital stock. Plaintiff became the

[1]Reported in 253 N. W. 3.

secretary and active managing officer of defendant. Thereafter defendant sublet the leased land to the Marquette Ore Company to mine the ore upon an agreed royalty. In negotiating this sublease plaintiff acted for defendant with the knowledge and approval of its board of directors. Plaintiff had some experience as a dealer in iron ore lands and some practical knowledge of mining operations, but is not a mining engineer nor qualified without expert advice to conduct explorations or supervise drilling, tests, analyses, and examinations involved in determining the ore contents. The result of the tests and explorations made by defendant came to plaintiff, and he, in good faith, believing the same true, gave the data to the Marquette Ore Company in negotiating the sublease. The last named company began operations under the sublease and mined over 1,000,000 tons of iron ore, paying defendant more than $750,000 in royalties. But the sublease was surrendered, and the Marquette Ore Company, in September, 1927, began an action in the district court of the United States, for the district of Minnesota, against defendant, plaintiff, Ames, and McLennan, charging that they had induced the ore company to enter the sublease by false and fraudulent representations as to the tests and exploring data furnished, claiming damages in the sum of $1,500,000. McLennan was not served with summons. Defendant employed attorneys to answer and defend it, plaintiff, and Ames. There was a trial. The attorneys at the close of the evidence made a joint motion for a directed verdict. A verdict was directed for Ames but denied as to this defendant and plaintiff. There was a verdict against both for $476,664.98, upon which judgment was entered. Plaintiff at that time owned other real estate exceeding in value the amount of the judgment. He was not advised of his hazardous position by reason thereof; but, realizing the same, consulted other attorneys than those furnished him by defendant and employed them to make a separate defense for him in the subsequent stages of the litigation. Plaintiff and defendant moved for a new trial and when denied appealed to the circuit court of appeals, where a joint brief was filed. The circuit court of appeals ruled that the evidence was insufficient to sustain the charge of false representations and fraud

and set aside the verdict. There is no allegation that the attorneys employed by defendant to conduct the defense of all were not competent or able. Nor is there any allegation that this plaintiff had a defense separate or apart from this defendant which the attorneys did not plead or prove. Nor could such allegations well be made, for plaintiff was the managing officer of defendant and supposedly had the right to select the attorneys and was the only defendant who conducted the negotiations. There is no intimation in the pleading that the attorneys first employed failed properly to defend either as to this plaintiff or defendant, except the allegation that no separate motion to direct a verdict in favor of this plaintiff was made. On the allegations in the complaint it is not perceived that a verdict could have been directed in favor of one and not of the other. There is an allegation that plaintiff was subjected to the litigation and the attorneys' fees incurred "solely and wholly as a proximate result of the fact that as secretary and active managing officer of defendant it became his duty to conduct the negotiations with" the Marquette Ore Company; but we think the learned trial court rightly regarded this a conclusion and not an allegation of fact. The action is to recover the fees plaintiff incurred to the attorneys he employed on the appeal. The allegation is that he "reasonably and necessarily paid or incurred for attorneys' fees, amounts paid to other employes, telephone and telegraph tolls, travel expense, additional assays and sampling and similar items the sum of" $13,122.20. We assume that the items mentioned in the quoted allegation other than the attorneys' fees are merely incidental thereto, and hence the real question is whether the complaint states a cause of action for the fees incurred by plaintiff to the attorneys employed by him, aside from the attorneys defendant employed to carry on the defense for all in the action brought by the Marquette Ore Company.

"Wherever, then, the agent is called upon by his principal to do an act which is not manifestly illegal, and which he does not know to be wrong, the law implies a promise on the part of the principal to indemnify the agent for such losses as flow directly and im-

mediately from the very execution of the agency." 1 Mechem, Agency (2 ed.) § 1603.

Under the principle stated, it has been held that a principal must reimburse the agent for the reasonable attorneys' fees incurred by the agent in defending himself in an action brought by a third party on account of some transaction conducted by the agent in good faith in behalf of the principal, even though the third party action was unfounded but not brought in bad faith. Hoch v. Duluth B. & M. Co. 173 Minn. 374, 217 N. W. 503, 56 A. L. R. 970; Stocking v. Sage, 1 Conn. 518; First Nat. Bank v. Tenney, 43 Ill. App. 544; Powell v. Trustees of Village of Newburgh, 19 Johns. 284; Clark v. Jones, 84 Tenn. 351; Hoggan v. Cahoon, 26 Utah, 444, 73 P. 512, 99 A. S. R. 837; Du Puy v. Crucible Steel Co. (D. C.) 288 F. 583. The learned trial court, in the memorandum attached to the order, stated that the attorneys' fees plaintiff incurred in the appeal were not such as "resulted directly and immediately or to naturally flow from the acts of the plaintiff, as an officer and manager of the North Range Iron Company, in respect to negotiation for the mining lease in question," within the Hoch [173 Minn. 374] and Du Puy [288 F. 583] decisions. And the court further calls attention to the fact that the Marquette Ore Company sued both the principal, this defendant, and the agent, this plaintiff, and that defendant employed competent attorneys who answered for both and conducted the defense for both up to the entry of judgment. Defendant, therefore, performed its obligation to plaintiff up to that time by bearing the expenses of the litigation, including responsibility of all attorneys' fees.

Are any facts pleaded which justified plaintiff in employing separate attorneys in the appeal? We think not. The allegation that plaintiff had holdings of real estate exceeding in value the judgment is of no importance in the absence of any averment that defendant was not amply prepared to satisfy the judgment. Nor are we inclined to stress the fact that the trial attorneys made a joint instead of a separate motion for a directed verdict in favor of defendants. The defendant Ames nevertheless obtained a direct-

ed verdict. We do not overlook the allegation that the attorneys engaged by plaintiff to carry on the litigation for him solely labored with the attorneys originally retained and joined in the brief and the oral argument on the appeal. It is not alleged that defendant requested this be done or that it agreed to pay for the services of the attorneys plaintiff employed to carry on the appeal for him alone. Nor should there be any implied agreement to do so, for plaintiff and the other two personal defendants owned defendant's stock and were personally interested in the defense.

As far as this complaint goes, plaintiff was the sole managing agent and officer of defendant. If it became obligated to the Marquette Ore Company because of any representation made in negotiating the sublease, that representation was made by plaintiff. It is not alleged that any other person participated in the negotiations. Nor are facts alleged from which it can be inferred that defendant was guilty of any false representation that was unknown to plaintiff, or that it furnished plaintiff with any improper data, report, or information to be communicated to the Marquette Ore Company to induce it to enter the sublease. So the defendant had to stand or fall on the defense plaintiff could make. Nor is it claimed that the successful appeal could not have been attained without the aid of the attorneys plaintiff employed on his sole account.

In the cases above cited and in those therein referred to, the agent was sued alone by the third party, and when the agent was reimbursed for reasonable attorneys' fees it appeared that the principal had refused or neglected to furnish attorneys for the agent after notice or knowledge of the suit. After some search we have found no case where, in a suit by a third party against both the principal and agent in which the principal employed competent attorneys to defend both, it was held that the agent was nevertheless entitled to employ his own separate attorney and recover the reasonable attorney's fees from the principal.

The order is affirmed.

*DEVANEY, Chief Justice,* absent in attendance on board of pardons, took no part.

*LORING, Justice,* took no part.