## DU PUY v. CRUCIBLE STEEL CO. OF AMERICA.

(District Court, W. D. Pennsylvania. March 13, 1923.)

No. 2732.

Corporations ⟵309(1)—President not entitled to recover from the corporation expenses of prosecution by government for fraud in tax returns.

President of a corporation is not entitled to recover therefrom expenses to which he was subjected in defending a prosecution against him, under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to defraud the United States in connection with the making of tax returns, though he acted for the corporation in good faith and was not guilty of the charge set forth in the indictment.

At Law. Action by Herbert Du Puy against the Crucible Steel Company of America. Judgment for defendant.

Patterson, Crawford, Miller & Arensberg, of Pittsburgh, Pa., for plaintiff.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa:, for defendant.

THOMSON, District Judge. This case is anomalous. The plaintiff alleges that, while president of the Crucible Steel Company, he made or caused to be made certain returns to the federal government, showing the income and excess profits tax of said corporation, and that because of acts done by him in connection with said tax returns he, together with the treasurer of the company, was indicted by a grand jury of the United States and tried for conspiracy to defraud the United States; that on that indictment he was tried and acquitted, and seeks in this action to recover from the corporation the expenses to which he was subjected in making defense thereto. The plaintiff's proposition is that he was acting for and on behalf of the corporation; that he acted in good faith and without illegality; that his acts were for the best interest of the defendant, and were in effect the acts of the principal; that he was not guilty of the charge set forth in the indictment; and that the liabilities of his principal, the defendant, arose out of an implied contract to indemnify him, its agent, for the loss sustained in consequence of the discharge of his duty to his principal.

It is defendant's position that the material averments of the statement, assuming them all to be true, as we must on this motion, do not constitute a cause of action. Let us, therefore, see first exactly what these averments are, and then determine their scope and effect by applying the definite legal standard by which defendant's liability must be measured.

It is averred that plaintiff, within designated periods, was chairman of the executive committee and chairman of the board of directors, and also general manager of the defendant company; that it was the plaintiff's duty, as chairman of the executive committee of the board of directors, as chairman of the board of directors, and as general manager of the defendant, to outline the policy of the defendant as to all matters connected with the business, and to supervise all of the

company's affairs, including the method of determining the federal income and excess profits tax returns; that he did so outline the policy of the defendant with respect to its business, and did so supervise the defendant's affairs, including the method of determining such tax returns; that in outlining the policy of defendant concerning its business and the supervision of its affairs, including the method of determining said tax returns, plaintiff consulted the treasurer and controller of the defendant company, and received the opinion of expert accountants employed by the defendant with respect to said matters, and in all instances followed their advice and performed his duties honestly, to the best of his ability, for the purpose of furthering the interests of the defendant, so far as the same could be done fairly and legally; that the plaintiff was indicted, together with the said treasurer of the company, by the grand jury of the United States, for conspiracy to defraud the United States in connection with the federal income tax returns, which were filed for and on behalf of the defendant, because of certain acts alleged to have been done by the plaintiff while he was an officer of the defendant, as above set forth. The said indictment is then referred to and made part of the statement of claim, for the purpose of making more certain the acts with which the defendant was charged in said indictment. It is further averred that plaintiff was not guilty of any of the charges set forth in the indictment, and on the trial of the same a verdict of "not guilty" was rendered by the jury; that in defending himself against said prosecution he spent large sums of money in traveling expenses, fees of counsel and accountants, aggregating $162,048.12; that all of said expenditures were necessary and proper to be made by him in defending himself against such prosecution; that defendant did not assist the plaintiff in his said defense, but, on the contrary, was hostile to the plaintiff; that the expenses to which the plaintiff was put were incurred solely as a result of the acts done by him as an officer and agent of the defendant and in its behalf, and were done by him in the opinion and belief that the same were for the best interests of the defendant, and were such in fact, and were entirely legal and proper acts to be done by the plaintiff as an officer and agent of the defendant company, acting in its behalf.

Turning to the indictment, which is made a part of the statement of claim, we find that defendants are charged with conspiracy to defraud the United States relative to the income, war profits, and excess profits taxes upon the income of the Crucible Steel Company; that in pursuance of said conspiracy, and to effect its object, the defendants committed certain overt acts, such as entering in the books of the company false estimates or inventories of the personal property of the company, several millions in amount below the true value; entry in the books of the corporation of a false charge of $1,000,000 as an item of additional depreciation, entitling the corporation to deduct that amount from its taxable income; falsely and fraudulently deducting an item of over $2,000,000 from the company's gross receipts; the making of false income tax returns to the federal government, one showing an amount of income of more than $3,000,000 less than the true income, and another an amount of more than $4,000,000

less than the true income, together with other overt acts, most of which constitute in themselves substantive offenses.

The indictment was drawn under section 37 of the Criminal Code of the United States (Comp. St. § 10201), the offense charged consisting of two elements: First, the conspiracy, that is, the unlawful combination or agreement; and, secondly, the doing of some act by one or more of the conspirators to effect the object of the conspiracy. Such overt acts set forth in the indictment may or may not be criminal acts in themselves, but being sufficient to sustain the indictment, if they were done to effect the object of the conspiracy. An acquittal on the indictment, therefore, means a finding either that the conspiracy was not formed, or, if formed, that the acts charged were not done or not committed in execution of the conspiracy.

Having thus before us all the averments upon which the plaintiff's action is based, by what rule must defendant's liability be tested? I think the true rule which governs the right of the agent to call on his principal for indemnity, is laid down by Mechem on Agency, § 1603, as follows:

"Whenever an agent is called upon by his principal to do an act which is not manifestly illegal and which he does not know to be wrong, the law implies a promise on the part of the principal to indemnify the agent for such losses as flow directly and immediately from the very execution of the agency."

In section 604 it is said:

"It must be a direct and natural consequence of the execution of the agency."

This rule, when applied with proper discrimination to the varying facts, will generally reconcile the apparently conflicting cases. Considering, first, the cases cited by the defendant: in Adamson v. Charles, 4 Bing. 66, plaintiff, an auctioneer, was requested by the defendant to sell certain cattle which the latter represented he owned. Plaintiff sold the cattle, deducting the amount of his commission. It developed that the cattle were not owned by the defendant, but by a third person. This person sued the plaintiff for the value of the cattle and recovered. Plaintiff then sued defendant for the amount paid out to satisfy the judgment and pay his attorney's fees. He was allowed to recover. Here it is plain that the fault was defendant's, and the loss flowed directly and immediately from the execution of the agency.

In Powell v. Trustees of the Village of Newburgh, 19 Johns. (N. Y.) 284, plaintiff was one of the trustees of the village. He and the other defendants, also trustees, while in office closed a certain highway. After their term of office had expired, the person who claimed to have been injured by the closing of the street sued the plaintiffs; the latter expending moneys in defending the suit. The present trustees had notice of the suit and of the amount spent in defense. The plaintiffs were allowed to recover for the expenditures so made. The court said:

"These principles are precisely applicable to this case: The plaintiffs were sued for an act done by them as the agents and trustees of the corporation, in the course of their agency, and pursuant to authority."

This recovery was in harmony with the rule above stated.

In Re Titus, 86 Misc. Rep. 375, 148 N. Y. Supp. 367, a suit in tort, the testator during his lifetime employed the plaintiff to buy certain shares of stock and hold them for him. This he did, and as a result the plaintiff was sued by third persons. It was held that plaintiff, as agent, was entitled to be reimbursed for money spent by him in defending the action. Here again the loss incurred was a direct and natural consequence of the execution of the agency, flowing directly from it.

In Clark v. Jones, 16 Lea, (Tenn.) 351, defendant requested plaintiff to buy a pair of mares, with a guaranty of soundness and gentleness, from one Mullin. Plaintiff bought the mares, and shipped them to Jones as directed. The latter refused to accept the animals, because they were not warranted. Plaintiff was sued for the purchase price, and incurred expenses, as well as having to pay the judgment. In a suit for reimbursement, he was allowed to recover. Here, also, the loss arose through the very execution of the agency with which plaintiff had been intrusted by his principal. The same principle applies in the case of First National Bank v. Tenney, 43 Ill. App. 544.

In Selz v. Guthman, 62 Ill. App. 634, a sheriff, acting under directions of attaching creditors, made a levy, and it was held that he was entitled to call upon them to protect him against the claim made upon a suit brought against him by the mortgagees whose property he had seized. It is here plain that the suit arose because of the carrying out by the agent of the instructions given him by the principals. He had a right to defend such action, and insist that those in whose behalf he acted should pay the claim or defray the expenses of the suit. At page 634 the court said:

"A rule which pervades the whole law of principal and agent is that the principal is bound to indemnify the agent against the consequences of all acts done by him in due execution of the authority conferred upon him."

This is in harmony with the rule which I have been considering. So in Maitland v. Martin, 86 Pa. 120, it was held:

"If an agent in perfecting a sale for his principal, acts strictly within the line of his duty, and in good faith, and without fault on his part in the management of the sale he incurs damages, they must be borne by the principal and not by the agent."

The case upon which perhaps plaintiff chiefly relies is that of D'Arcy v. Lyle, 5 Bin. (Pa.) 441. In that case A., as the agent of B., recovered from D. & Co. certain goods of B.'s by decree of the court of Cape Francois, then sold the goods and returned the proceeds to B. Afterwards, C., who had previously had an attachment on the goods, brought suit against A., and the latter, compelled by extremely coercive means, confessed, contrary to the truth, that at the time of recovering the goods he promised to pay C. the amount sued for, and allow judgment to go against him. In a suit by A. against B., his principal, for the amount which he had thus paid, he was allowed to recover. A careful examination of the facts and the opinions of the court, will disclose that the case is not an exception to the rule that limits the right of an agent to indemnity from the principal to such losses only as are the

direct and natural consequence of the execution of the agency. The real question there was whether under the circumstances, the confession of judgment and payment by the agent under duress was made in connection with the recovery of the principal's goods, which agency he was appointed to execute. This appears from the following excerpts from the opinions of the court. Chief Justice Tilghman said:

"The material fact on which this case turns is whether the transactions between the plaintiff and Richardson were on any private account of the plaintiff, or solely on account of the defendant. That was submitted to the jury, and we must now take for granted that the proceedings at the Cape against the plaintiff were in consequence of his having received possession of the defendant's goods from Suckley & Co."

Justice Yeates, concurring in the opinion, says:

"The case was put to the jury to decide whether the conduct of the plaintiff as agent of the defendant was correct, and whether the payment of the $3,000 under the sentence of the court of Haiti was extorted under color of law from him for acts done by him during his agency. The jurors by their verdict have established the affirmative of both questions, and I was far from being dissatisfied therewith."

Defendant cites certain cases in line with the principle repeated above. In Halbronn v. International Horse Agency, King's Bench Division, 270, the facts were these: Defendants employed plaintiff, an auctioneer, to advertise and sell a horse, registered in the English Stud Book, under the name of "Pentecost." The auctioneer advertised the horse as so registered, and an action was brought against him in a French court by the owner of a horse, also called Pentecost, claiming that he was damaged by a false representation, and recovered. The auctioneer brought suit against the defendants for indemnity, and it was shown that the representation made by the auctioneer was true, and it was held that the defendants were not liable. Justice Bruce, among other things, said:

"In the present case the damages recovered in the French court against the plaintiff in this action arose, not from any act done by the plaintiff in pursuance of this employment by the defendants, but arose from a mistake as to the identity of the mare Pentecost, arising from the fact that some person in France had procured another mare to be entered in the Paris Stud Book as Pentecost. In my opinion, the defendants are in no wise answerable for this mistake, and they cannot be rendered liable to pay to the present plaintiff the damages which the French court awarded against him."

In Mills Novelty Co. v. Dupouy, 203 Fed. 254, 121 C. C. A. 452, 45 L. R. A. (N. S.) 788, defendant shipped coin-operating machines to Venezuela, consigned to itself in care of plaintiff, a commission merchant in that country. Plaintiff presented the invoices to the customs office, where the machines were refused admission as gambling devices, and by reference to the fiscal court they were confiscated, and the duty and fine adjudged against the plaintiff, who paid the same and brought suit in this country to recover from the defendant. The court held that no recovery could be had. It is clear in that case, and the opinion put it upon that ground, that any recovery would be barred as opposed to public policy; that it is " 'a rule of the common law, of universal application, that when a contract, express or implied, is tainted with the vice' of violation of law, 'as to the con-

sideration or the thing to be done, no alleged right founded upon it can be enforced.' "

Applying the well-established legal test, to which I have referred several times in this opinion, to the case in hand, we find that the plaintiff's case must fail. The law required, and it became the duty of, the corporation's officers to file proper tax returns. There was nothing in the execution of that agency which could subject the agent to a criminal prosecution for conspiracy, in the ordinary course of human affairs. It goes for the saying that it could not be contemplated by the parties, in the execution of the agency, that the United States would prosecute a party criminally for doing that which the law required him to do. It follows that the criminal prosecution which resulted, could not have been, and was not, a direct and natural consequence of the making of the tax returns. In no sense did it flow directly and immediately from the execution of the agency; that is, from the *making* of the tax returns. That was a proper and legal thing to do. On the other hand, the prosecution flowed from the *manner* in which the return was made; the government charging, as set forth in the indictment, that the defendant was guilty, with another, of conspiracy to defraud the government in making false and fraudulent tax returns. In doing a perfectly legal thing, the agent may do it in such careless or criminal manner as to subject himself to a charge of criminality, and for the expenses of defending himself against such charge there can be no recovery in law. Nowhere in the statement of claim does it appear that the returns so made were true and correct returns, or, if incorrect, that this was the result of honest mistake. This is a very significant omission. On the whole, I am persuaded, under the authorities and on principle, that the plaintiff has wholly failed to state a cause of action, and that the defendant is entitled to judgment on the pleadings.