PEOPLES-PITTSBURGH TRUST CO. AND AMY H. DuPUY, EXECUTORS, UNDER THE WILL OF HERBERT DUPUY, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21946.   Promulgated December 8, 1930.

*Thomas Watson, Esq.*, and *D. G. Sisterson, C. P. A.*, for the petitioners.

*R. W. Wilson, Esq.*, for the respondent.

OPINION.

SMITH: The issue in this case is whether the amount of $162 048.12 paid out by Herbert DuPuy as fees to attorneys and accountants

and incidental expenses in connection with defending himself from a criminal charge for conspiracy is deductible in computing his taxable net income for the calendar year 1921. Counsel for petitioners, on brief, after citing numerous decisions of the Board, including several decisions relating to the character of expenses incurred in defending criminal actions, contend that:

The United States of America prosecuted Herbert DuPuy on a charge of conspiring with George A. Turville to defraud the United States out of income and excess profits taxes legally and properly payable by the Crucible Steel Company of America and its subsidiaries to the United States for the years 1917 and 1918. Herbert DuPuy was the executive head of the Crucible Steel Company of America and of its subsidiaries. George A. Turville was Secretary and Treasurer of said corporations. The two defendants, in their official capacities, executed and made affidavit to the tax returns of the Crucible Steel Company, for the years 1917 and 1918. It is obvious that the above action of Herbert DuPuy related to the trade or business. The law required corporations to prepare and file income tax returns for the years in question. The law also required these returns to be signed and sworn to by the executive officers. In preparing and signing the income tax returns of the Crucible Steel Company and of its subsidiaries, Herbert DuPuy was at one and the same time, complying with the requirements of the Revenue Act and also performing his duty towards the Crucible Steel Company and it subsidiaries, as chief executive officer. It can not be said that Herbert DuPuy was acting beyond the scope of his authority and, hence, individually. The Government challenged the tax returns, not because Mr. DuPuy was acting beyond the scope of his authority (and hence individually), but solely because Mr. DuPuy, while acting within the scope of his authority, as conceded by the Government, was party to a conspiracy to make a false return and thus defraud the United States out of taxes lawfully due and payable.

It is conceded in the stipulation of facts filed in this case, that during the years 1917, and 1918, Herbert DuPuy devoted his time and attention almost exclusively to the affairs of the Crucible Steel Company of America, giving his personal attention to the consideration of war contracts for shells and munitions. It is also stipulated that Herbert DuPuy was a Metallurgical Engineer by profession, and had made the iron and steel business his life work. That he was one of the leaders of the industry was conclusively established by the fact that his compensation from the Crucible Steel Company and its subsidiaries was $548,877.25 for the year 1917, and $596,725.39 for the year 1918. The performance of his duties and responsibilities as the executive head of the Crucible Steel Company and its subsidiaries was Herbert DuPuy's profession, vocation, trade or business. His ability in this profession and vocation produced a handsome income, of which the United States received the greater part in taxes.

The respondent maintains that the deductions claimed did not constitute ordinary and necessary expenses incurred by Herbert DuPuy in carrying on any trade or business, and in support of this contention counsel, on brief, cites numerous decisions of the Board and the decision in *Du Puy v. Crucible Steel Co. of America*, 288 Fed. 583. With respect to contentions of counsel in this proceeding, we agree with the contention of counsel for petitioners that

Herbert DuPuy's business during 1917 and 1918 was that of being executive head of the Crucible Steel Co. of America and its subsidiaries, and we are further of the opinion that expenses incurred in defending an action growing out of acts done in the ordinary course of a trade or business where no crime was committed are ordinary and necessary expenses of such business. This leaves for our determination whether the acts committed by Herbert DuPuy out of which the criminal charges grew were connected with his trade or business. The relationship of the acts committed by DuPuy as between himself and the Crucible Steel Co. of America was considered by the District Court in *Du Puy* v. *Crucible Steel Co. of America, supra,* the court saying relative thereto that:

Applying the well-established legal test, to which I have referred several times in this opinion, to the case in hand, we find that the plaintiff's case must fail. The law required, and it became the duty of the corporation's officers to file proper tax returns. There was nothing in the execution of that agency which could subject the agent to a criminal prosecution for conspiracy, in the ordinary course of human affairs. It goes for the saying that it could not be contemplated by the parties, in the execution of the agency, that the United States would prosecute a party criminally for doing that which the law required him to do. It follows that the criminal prosecution which resulted, could not have been, and was not, a direct and natural consequence of the making of the tax returns. In no sense did it flow directly and immediately from the execution of the agency; that is, from the *making* of the tax returns. That was a proper and legal thing to do. On the other hand, the prosecution flowed from the *manner* in which the return was made; the government charging, as set forth in the indictment, that the defendant was guilty, with another, of conspiracy to defraud the government, in making false and fraudulent tax returns. In doing a perfectly legal thing, the agent may do it in such careless or criminal manner as to subject himself to a charge of criminality, and for the expenses of defending himself against such charge there can be no recovery in law. Nowhere in the statement of claim does it appear that the returns so made were true and correct returns, or, if incorrect, that this was the result of honest mistake. This is a very significant omission. On the whole, I am persuaded, under the authorities and on principle, that the plaintiff has wholly failed to state a cause of action, and that the defendant is entitled to judgment on the pleadings.

However, in *Kornhauser* v. *United States,* 276 U. S. 145, the Supreme Court said:

On the case made by the petition the expenditure in question was either a personal expense or a business expense; it was not a living or family expense. And it was an " ordinary and necessary " expense, since a suit ordinarily and, as a general thing at least, necessarily requires the employment of counsel and payment of his charges. The petition is not as definite as it might have been, but from its allegations, interpreted as the Solicitor General concedes they may be, it appears that the accounting suit presented the question whether the compensation in respect of which the copartner sought an accounting was for professional services performed by petitioner during the existence of the partnership or after its termination, the defense to that suit being

based upon the latter alternative. In either view, the compensation constituted business earnings.

The Solicitor of Internal Revenue in a recent opinion has held that legal expenses incurred by a doctor of medicine in defending a suit for malpractice were business expenses within the meaning of the statute. In the course of the opinion it was said that such expenditures were as much ordinary and necessary business expenses as they would be if made by a merchant in defending an action for personal injuries caused by one of his delivery automobiles, and that in the latter case the deduction would be allowed without question. C. B. V–1, p. 226.

Another departmental ruling is to the effect that legal expenses incurred in defending an action for damages by a tenant injured while at work on the taxpayer's farm are deductible as a business expense. C. B. 5, p. 121.

In the *Appeal of F. Meyer & Brother Co.*, 4. B. T. A. 481, the Board of Tax Appeals held that a legal expenditure made in defending a suit for an accounting and damages resulting from an alleged patent infringement was deductible as a business expense.

The basis of these holdings seems to be that where a suit or action against a taxpayer is directly connected with, or, as otherwise stated (*Appeal of Backer*, 1 B. T. A. 214, 216), proximately resulted from, h's business, the expense incurred is a business expense within the meaning of section 214(a), subd. 1, of the act. These rulings seem to us to be sound and the principle upon which they rest covers the present case. * * *

In view of what has been said by the Supreme Court in the *Kornhauser* case, *supra*, we are of the opinion that although the character of the acts and the manner in which they were done prevented the recovery of the $162,048.12 from the Crucible Steel Co. of America, nevertheless the necessity of paying out that sum of money was occasioned by acts done by DuPuy in connection with his trade or business that were directly related thereto. No one will contend that it is not lawful for a doctor of medicine to practice his profession or that he would ordinarily be compelled to face criminal charges in connection with such practice, although it may be that the manner in which he conducts his practice may occasion the preferment of such charges. It must be conceded that every taxpayer has the right to carry on his business in such manner as seems to him best. If, in carrying on his business, he commits acts amounting to the commission of a crime, such acts can only be regarded as personal, and expenses incurred by him in a proceeding which establishes the criminal character of the acts are personal expenses. But where, as here, the acts are characterized as business acts, we are not further concerned as to whether they may have been careful or negligent. The $162,048.12 expended by Herbert DuPuy during 1921 constituted legal deductions in ascertaining his taxable net income for that year.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

LANSDON and ARUNDELL dissent.