Albert L. Sanderson and Beatrice C. Sanderson v. Commissioner.
Sanderson v. Commissioner
Docket No. 56830.
United States Tax Court
T.C. Memo 1957-23; 1957 Tax Ct. Memo LEXIS 231; 16 T.C.M. (CCH) 105; T.C.M. (RIA) 57023; January 31, 1957
*231 Held, that portions of club dues paid personally by an executive officer of a trust company are deductible by him as ordinary and necessary business expenses. The amounts of such deductions are determined. Daniel G. Yorkey, Esq., and Donald F. Runyan, Esq., Marine Trust Building, Buffalo, N. Y., for the petitioners. Clarence P. Brazill, Jr., Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined deficiencies in the income taxes of the petitioners in the amounts of $309.30 for the year 1950, and $309.08 for the year 1951. The issue for decision is whether certain club dues paid by one of the principal executive officers of a trust company are deductible by him as ordinary and necessary business expenses. Findings of Fact Some of the facts have been stipulated; and the stipulation is incorporated herein by reference. The petitioners are husband and wife. They filed joint income tax returns for each of the years involved with the then collector of internal revenue for the twenty-eighth district of New York at Buffalo. The wife has been joined in this proceeding solely by reason of her being a *232 party to said joint returns. At all times material, the petitioner Albert L. Sanderson (hereinafter called Sanderson) was a principal executive officer of The Marine Trust Company of Buffalo (hereinafter called the "Trust Company"). In 1950 and for a number of years prior thereto, he was both vice-president and executive assistant to the president; and in 1951 he was promoted to, and thereafter served, as senior vice-president. In all of these capacities he, together with the other principal executive officers, was responsible for the development and maintenance of the business of the Trust Company; and it was one of his duties to entertain existing and prospective customers. For a number of years prior to 1947, Sanderson had been a member of the MidDay Club of Buffalo, paying his own dues. In about December 1946, the president of the Trust Company suggested to him that he join some additional clubs, and specifically directed him to join The Buffalo Club. Thereupon he did join the latter club, and the Trust Company paid his dues. Shortly thereafter, the vice-president of the Trust Company, who was Sanderson's immediate superior, observed that The Buffalo Club dues were being *233 borne by the Trust Company, and suggested that he should pay them personally. Sanderson stated that he could not afford to do this. A short time later the vice-president again spoke to him; informed him that his salary was being increased from $10,300 to $12,500; and stated "Now you should be able to pay your own dues." Following this salary increase, Sanderson assumed greater responsibilities as executive assistant to the president. Also, in accordance with the president's previous suggestion, he joined the Buffalo Canoe Club in January 1947, and the Country Club of Buffalo in November 1947, in both instances paying his own dues; and in addition, he assumed payment of The Buffalo Club dues. No portion of the salary increase was specifically designated for payment of club dues, and the Trust Company would have continued payment of The Buffalo Club dues if he had not assumed them. However, Sanderson had no written contract of employment with the Trust Company, and he relied solely upon the recommendations of his superiors for promotion. He believed that failure to expand his club memberships and to personally pay the dues therefor, in accordance with the suggestions of these superiors, *234 might jeopardize his future. In 1948 Sanderson became chairman of the expense committee of the Trust Company. It was the duty of this committee to examine expenses and reduce them. The Trust Company's policy was to encourage its principal officers to pay their own club dues; and Sanderson, in his capacity as chairman of the expense committee, undertook to advance such policy among the officers. This was an additional factor which influenced him in paying his own club dues. Actually, during the years involved, three of the four principal executive officers of the Trust Company, includingsanderson, did pay their own club dues; and payment by the Trust Company of the other officer's dues resulted from the special circumstance that this officer's work was confined almost exclusively to the development of new business and the promotion of public relations. During 1950 and 1951, Sanderson paid the following amounts for club dues: 1950
1951
Mid-Day Club of Buffalo
$ 50.40
$ 58.80
The Buffalo Club
300.00
300.00
Buffalo Canoe Club
70.00
Country Club of Buffalo
370.00
360.00
Totals
$790.40
$718.80
The Mid-Day Club of Buffalo was a men's luncheon club, *235 and it was never used by Sanderson's family. The Buffalo Club was primarily a club for men, and included in its membership many influential and prominent business and professional people; only on a very few occasions was it used by Sanderson's family. The Canoe Club and the Country Club were both family clubs; but Sanderson's family did not use the Canoe Club at all, and its use of the Country Club was very limited. Sanderson joined all of these clubs primarily for business purposes; and, although he never directly solicited business at them, considerable business did result from his acquaintance with the other club members. He resigned from the Canoe Club at the end of 1950, because he did not think it was adequately serving its intended business purpose. The petitioners, in their income tax returns for the years involved, deducted the above-mentioned amounts which Sanderson had expended for club dues, with the explanation that these expenditures were incurred in connection with his employment. The respondent, in his notice of deficiency, disallowed the deductions. Opinion The determinative factor, in deciding whether Sanderson is entitled to deduct all or a portion of the *236 amounts which he paid for club dues, is whether they qualify as "ordinary and necessary expenses" which he incurred in carrying on a business, within the meaning of section 23(a)(1)(A) of the Internal Revenue Code (1939). This Court has held that being an executive officer of a corporation may constitute a trade or business. Ralph C. Holmes, 37 B.T.A. 865, 871; Peoples-Pittsburgh Trust Co., et al., Executors, 21 B.T.A. 588, 590-591, affirmed 60 Fed. (2d) 187, (C.A. 3). See also Folker v. Johnson, 230 Fed. (2d) 906, 909, (C.A. 2). And both this Court and others have held that, where a corporate officer personally incurred expenses that enabled him to better perform his work as an officer, such expenses are deductible. Schmidlapp v. Commissioner, 96 Fed. (2d) 680, (C.A. 2), modifying on this issue a Memorandum Opinion of this Court; Harold A. Christensen, 17 T.C. 1456; Benjamin Abraham, 9 T.C. 222. The Schmidlapp case involved the deductibility of entertainment expenses incurred by a vice-president of the Chase National Bank of New York, which expected that he would entertain, at his own expense *237 and as part of his duties, visitors whose favor the bank desired. Judge Learned Hand, in his opinion for the court, stated: "as the record stands we must take it that only the 'Recess Club Charges' were sufficiently proved - $590.75 in 1932. If proved, these outlays were, however, deductible. In Cohan v. Commissioner, 2 Cir., 39 Fed. (2d) 540, we held that the expenses of an impresario in entertaining the actors and chorus during the period of rehearsals, was one of the 'ordinary and necessary expenses * * * in carrying on' his business; and we cannot see anything to distinguish the expenses at bar, so far as they really were to drum up business for the bank, though it was proper to be extremely suspicious as to how far that was their purpose. It is no answer to say that they were for the bank's benefit; so were all the taxpayer's services; if it did in fact give him to understand that he was to extend a factitious hospitality in its interest, the cost of it was a necessary expense of his office. * * *" In the Christensen case, the expenditures were made by a field manager of a corporation in entertaining salesmen upon whom the success of his job depended. And, in *238 the Abraham case, the expenditures were made by an executive officer of a corporation in entertaining customers and prospective customers of his company, because he felt it was good business policy to make them. The question is primarily factual; and the answer depends upon the particular facts to be determined in the light of all the surrounding circumstances. In the instant case, we are satisfied, from our analysis of the evidence, that the greater portion of the amounts which Sanderson expended for club dues were ordinary and necessary expenses of carrying on his business as an executive officer of the Trust Company. His superior officers had "suggested" that he should join clubs for the better performance of his duties; and, after his salary was increased, they made it clear to him that he was expected to bear personally the expense of the club dues. To be sure, they did not threaten to discharge him if he failed to comply with their suggestions; but the purport of such suggestions was obvious. Sanderson honestly believed that, if he did not comply, his chances for advancement might be jeopardized. Also, he was chairman of the committee on expenses, which was promoting the Trust *239 Company's policy to have its executive officers bear their own club dues; and the majority of the principal executive officers actually did bear them. Moreover, business was developed through Sanderson's club memberships; and such business benefited him, as well as the bank. Sanderson has conceded that the clubs were used to some extent for the personal enjoyment of himself and his family; and we believe that, by reason of this fact, some adjustment of the total deductions claimed should be made. Based on the principle of Cohan v. Commissioner, 39 Fed. (2d) 540, we hold that deductions should be allowed, in respect of the above-mentioned club dues, in the amounts of $600 for the year 1950, and of $550 for the year 1951. Decision will be entered under Rule 50.