# Schrack *versus* McKnight.

1. S. authorized M. in writing to subscribe for five shares of a railroad company, and to pay the first instalment for him, and at the same time directed him verbally to enter the subscription in his (S.'s) name on the books. He also gave M. $25 for the first instalment on the stock. M. subscribed for the shares in his own name and paid all but the first call on them with his own money. When the stock was full paid, M. obtained a certificate for these and other shares in his own name, and soon after transferred five shares to S.'s name and tendered him a certificate for them, which S. refused to accept. There was no direct evidence of either a repudiation or ratification of M.'s conduct by S., though S. knew of M.'s action in the matter. S. received notices of calls from time to time, but refused to pay any instalments on stock which was not in his name. In an action by M. to recover the amount of the instalments paid by him, *Held*, that M. was bound, both by the letter of attorney and by his verbal instructions, to make the subscription in S.'s name, and that M. could not recover.

[Schrack *v.* McKnight.]

2. *Held*, that the question of whether S. ratified the subscription should have been left to the jury under the facts, and that there was no evidence in the case to warrant the court in holding, as a matter of law, that there had been a ratification.

3. *Held*, that it was error to charge that S., as soon as he heard that the subscription had been made in M.'s name, was bound to demand a cancellation of the letter of attorney or a transfer of the stock to his own name.

February 28th 1877. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Woodward, JJ.

Error to the Court of Common Pleas of *Berks county :* Of January Term 1877, No. 95.

Assumpsit by McKnight against Schrack to recover the subscription price of five shares of the Berks County Railroad Company.

At the trial these facts appeared :—

When the subscription books of the company were opened, Schrack authorized McKnight, by a letter of attorney, " to subscribe five shares of stock in the Berks County Railroad and to pay the sum of \$25 as the first instalment" for him, and " to vote said shares of stock, so subscribed, as fully and as effectually" as he, Schrack, " could do if personally present," &c. Before McKnight subscribed for the shares under this letter of attorney, Schrack told him that he wanted his stock on the subscription book in his own (Schrack's) name, and McKnight told Schrack he would attend to it and put the shares down in Schrack's name. This evidence was corroborated by one Kissinger and was uncontradicted. Schrack gave McKnight \$25 to pay the first instalment on the stock with.

McKnight subscribed for a hundred and forty-nine shares in his own name; among these were included five shares for Schrack. He paid the first instalment upon the five shares with the \$25, and the succeeding instalments with his own money. After the stock was full paid he obtained a certificate for a hundred and forty-nine shares in his own name. Three days afterwards he transferred five of these shares to Schrack's name and tendered the certificate to him. Upon Schrack's refusal to accept it, he brought suit against him for the amount he had paid on the stock.

There was no evidence of any direct act of either repudiation or ratification of McKnight's action by Schrack. It appeared that notice of calls was regularly sent to Schrack from time to time by the company.

One Fisher testified that when he called on Schrack for the company to collect one of the instalments due, Schrack refused to pay it until he got a certificate of stock in his own name. Schrack, however, gave a different version of the interview, testifying substantially that he had refused to pay for the stock, as the subscription was not in his name.

The defendant offered the following points, among others :—

[Schrack *v.* McKnight.]

1. That the letter of attorney from defendant to plaintiff limited plaintiff's agency simply to the act of subscription and the payment of the first instalment of $25.

6. That if the jury believe the evidence of John Kissinger and defendant with reference to notice by defendant to plaintiff that he wanted the stock in his own name, he was bound to subscribe for it in the name of the defendant, and anything beyond that is a violation of the letter of attorney, and not binding on defendant without positive proof of subsequent ratification.

11. That the payment of said five shares of stock by plaintiff was a voluntary, unauthorized payment, and therefore, even if the subscription made had been binding on defendant, plaintiff cannot recover.

The court, Hagenman, P. J., answered them as follows : "* * * if the jury find that the subscription, being in the name of plaintiff, was so made by him in good faith and for the mere purpose of carrying out the trust, and although defendant told plaintiff. that he wanted the stock in his own name, it was not such a violation of the letter of attorney as will excuse him from liability, even without proof of subsequent ratification. And all payments of future instalments which were made by plaintiff, if made to secure the stock so subscribed for the benefit of the defendant, the plaintiff is entitled to recover such moneys as he has paid, provided he has tendered to defendant a. certificate for the said five shares of stock ;" and further charged as follows : "whether the subscription was in his own name or that of Schrack, if McKnight acted in good faith and it was made as a mere matter of form to carry out the trust, it is binding on defendant. When Schrack discovered that his stock was in McKnight's name, if he was not satisfied with the manner of McKnight's subscription, he should have demanded a cancellation of letter of attorney, or transfer of the shares of stock in his own name."

There was a verdict for the plaintiff for the full amount in suit. After judgment, the defendant took a writ of error. The substantial errors assigned all raised the question of the plaintiff's agency.

*James N. Ermentrout* (with him *Daniel Ermentrout*), for the plaintiff in error.—McKnight's power was special, and should have been strictly pursued : Devinney *v.* Reynolds, 1 W. & S. 333 ; Baring *v.* Pierce, 5 Id. 548 ; Geiger *v.* Bolles, 1 Thomp. & C. 129. Besides, the verbal instructions were imperative ; the agent was bound to act upon them : Wilson *v.* Wilson, 2 Casey 393 ; Whart. on Agency, § 247. The whole charge ignored this question and put the case upon a question of "good faith" on McKnight's part ; even the question of ratification was withdrawn from the jury.

Schrack was not bound to demand a cancellation of the letter

[Schrack v. McKnight.]

of attorney; the subscription had been made, and as principal he was either bound by it or not; cancellation then could not have affected his liability. Besides, McKnight never notified Schrack of what he had done, or called upon him for instalments.

*C. H. Shaeffer*, for the defendant in error.—Schrack never repudiated the subscription, though he knew it had been made in McKnight's name and that the latter was paying the calls on it; he is therefore bound: Bredin v. Dubarry, 14 S. & R. 30; Kentucky Bank v. Coombs, 7 Barr 543; Whart. on Agency, § 125; Watts's Appeal, 28 P. F. Smith 370.

There was actual ratification by Schrack when he told the collector he would pay when he got his certificate.

Mr. Justice MERCUR delivered the opinion of the court, May 7th 1877.

We discover no substantial error in the fifth, sixth and ninth assignments. All the other assignments relate to question of agency, and will be considered together.

Three rules, in regard to the liability of a principal for the acts of one professing to be his agent, are pretty well established :

1. An agent constituted for a particular purpose, and under a limited power, cannot bind his principal if he exceeds that power.

2. A subsequent ratification by a principal of the unauthorized act of his agent, may have the same effect as previous authority.

3. The principal is bound to disavow the unauthorized act of his agent as soon as that fact comes to his knowledge, otherwise, as to third persons, he makes the act his own: Bredin v. Dubarry, 14 S. & R. 27; Valentine v. Packer, 5 Barr 333. But as between him and his agent the rule is not so stringent. In the latter case, he is not bound to disavow the act until he has such information of the facts and circumstances as will enable him to act understandingly : Porter v. Patterson, 3 Harris 229.

In this case the letter of attorney was specific and with a limited power. It authorized the agent to subscribe for five shares of stock for the principal; to pay a specific sum as the first instalment for him, and to vote the stock so subscribed as fully as the principal could do it if personally present. These three specific acts were all the letter of attorney authorized the agent to do. The language clearly implied that the stock should be subscribed for in the name of his principal. The sum to be paid as the first instalment was advanced to the agent, at the time he was authorized to subscribe. Under this specific and restricted agency it is clear that the agent could not subscribe in his own name for a much greater number of shares and long afterwards compel his principal to take five shares off his hands.

It further appears by the testimony of witnesses that at the very

[Schrack *v.* McKnight.]

time the agent was authorized to make this subscription, the principal said to him that he wanted the stock put in his own name, and that the agent replied he would put it down in his, Schrack's, name.

Subsequently, the agent caused a certificate for the whole stock purchased by him, to be issued to himself. Neither the mode of subscription nor the form of the certificate appears to have been authorized by the principal. They were contrary to both the written and the verbal authority given. The principal had the right to require a strict execution of the power given: Story on Agency, § 192; Wilson *v.* Wilson, 2 Casey 393. He may have had a very substantial reason for desiring the stock to be subscribed in his own name. Be that as it may, he had the right so to direct it, and his agent had no power to disregard those instructions and hold the principal liable for his action: Story on Contracts, § 359.

The plaintiff in error then could only be made liable for the unauthorized acts of his agent, by a failure to repudiate the acts after information or by subsequent ratification. The evidence would not justify the court in saying as a conclusion of law that the plaintiff had ratified the acts of his agent either by omission or commission. Those were questions of fact which should have been submitted to the jury to find under a proper review of the evidence.

The fact that a jury might find that the defendant acted in good faith does not enlarge his power. Neither does it absolve him from his obligation to obey his instructions; nor does it dispense with the necessity of his procuring a subsequent ratification. We see no evidence of any prior agreement, that the defendant in error should subscribe for the stock in his own name, and hold it in trust for the plaintiff in error. Without some evidence, it was error to submit that fact to the jury. So it was error to say to the jury in the imperative manner the court did, that when the plaintiff in error discovered the stock was in the name of his agent, if he was not satisfied with the manner of subscription, he should have demanded a cancellation of the letter of attorney, or a transfer of the stock to his own name.

He was not bound to do either. A cancellation of the letter of attorney would not affect the action already taken under it; nor was he obliged then to accept the stock. The conduct and action of the plaintiff in error when he discovered the fact referred to, and subsequently, were evidence pertinent for the jury to consider, as bearing on the question of ratification.

In so far as the court refused to affirm the sixth point, submitted by the plaintiff in error, that he was not liable without "positive proof" of subsequent ratification, we see no error. The word "positive" is too strong. It is defined by Webster to mean "direct," "express," opposed to "circumstantial." The proof should be "satisfactory," but it may be such without being "positive." In

[Schrack v. McKnight.]

that portion of the charge covered by the second assignment, the jury were told that the plaintiff in error might be liable "even without proof of subsequent ratification," if the agent acted in good faith, although the plaintiff in error told him he wanted the stock in his own name. It is true the judge added if the agent made the subscription in his own name "for the same purpose of carrying out the trust." He thereby assumed the existence of the trust, which is denied by the plaintiff in error. The fact of there being such a trust as to bind the principal, was a question to be first found by the jury, before he could be held responsible on it. The tendency of the charge was calculated to mislead the jury from a proper consideration of the controlling questions in the case.

It therefore follows that in so far as we have not qualified the language in the written points, the assignments are substantially sustained.

Judgment reversed, and a *venire facias de novo* awarded.