THOMAS NYGAARD v. MAESER FUR FARMS, INC.[1]

May 22, 1931.

No. 28,314.

*E. L. Rogers, F. E. Clark,* and *A. A. Logefeil,* for appellant.
*George P. Jones* and *C. M. Ascham,* for respondent.

WILSON, C. J.

Plaintiff bought several foxes from defendant, which under a contract with plaintiff kept the foxes on its ranch. Later plaintiff made certain listing agreements authorizing defendant to sell some of his foxes. These listing contracts were in the form of power of attorney, and the following is here the important portion:

"I, Thomas Nygaard, * *· * do * * * make, constitute and appoint Maeser Fur Farms, Inc., * * * my true and lawful agent for me, and in my name, place and stead, to sell and convey by bill of sale or special deferred payment contract, for cash or on terms as it deems best or expedient, my one pair of Mascot Strain Silver Black Foxes."

Plaintiff also authorized defendant as his agent to pelt 13 of his foxes and sell the pelts at the best possible price and remit the proceeds to him, less charges for pelting and handling.

The complaint states two causes of action. The first cause of action alleges that defendant sold five foxes for $5,000; that its charges were 36 per cent thereof or $1,800; and that defendant had paid plaintiff $816.84, leaving $2,383.16. The second cause of action was that defendant had disposed of the 13 pelts, 12 of which were of the value of $300 each, and one, a cull, of the value of $50, total $3,650.

The court directed a verdict for plaintiff in the first cause of action for the sum of $2,383.16, with interest. The jury found for the plaintiff in the second cause of action.

Defendant has appealed from an order denying its alternative motion for judgment non obstante or a new trial in respect to each cause of action.

■ Contrary to the terms of the written authority to sell the certain foxes in the name of plaintiff, defendant sold them in its own name. This constituted a conversion. Farrand v. Hurlburt, 7 Minn. 383 (477); Cock v. Van Etten, 12 Minn. 431 (522). It was a repudiation of the owner's right. 21 Harv. L. Rev. 408; 2 Dunnell, Minn. Dig. (2 ed.) § 1926. Defendant should have contracted in plaintiff's name. Sencerbox v. McGrade, 6 Minn. 334 (484).

■ Upon the trial of the case defendant was permitted to introduce testimony, over plaintiff's objection that it was in violation of the parol evidence rule, to the effect that the defendant's president informed plaintiff that all sales were to be made in defendant's name. The presence of such testimony in the record would ordinarily make a question for the jury. But we are of the opinion that since this alleged talk occurred in negotiation of, but before the written contract was executed, it was erroneously received if offered for the purpose of proving what the contract was. Having such status, it is not to be considered in discussing the propriety of the directed verdict.

■ In connection with the above mentioned testimony, counsel on the trial stated that it was not the intention thereby to vary or alter the terms of the contract. It would seem that counsel presented the evidence for the purpose of proving a waiver. It was presumably received by the court upon the theory declared by counsel and not for the purpose of changing the terms of the written instrument. But the difficulty is that this particular testimony was received before the right, which is said to have been waived, ever existed. It was not only not a known right, but it was not then a right at all. To constitute a waiver of a right, the facts or circumstances upon which reliance is had must have been performed or have transpired after the party against whom waiver is urged knew or should have known of the right. Dodge v. Minnesota P. S. R. Co. 14 Minn. 39 (49). Waiver is the relinquishment of a known existing right. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10134. It may sometimes be inferred from negligence; but here at the time of this talk there was no right to waive. The very essence of a waiver is the giving up of something which one has the right to exact.

Defendant urges other things in an effort to show waiver. It is said that plaintiff knew that the policy of the defendant was to make such sales, called resales, without disclosing the names of the purchasers. Plaintiff received reports of these sales, knew that the sales were made on time, knew that notes had been taken to evidence the purchase price, received remittances from partial payments. Defendant's secretary asked plaintiff if he wanted to cancel the resale contracts which were in default, and plaintiff said no, that he did not want the foxes but wanted to carry the resales and get his money. But nowhere in the record does it appear that the plaintiff was informed after the agency contract was executed that the sales were made in defendant's name instead of his own. He learned this for the first time about the time of trial. Of course waiver may be proved by circumstances, but we are unable to discover any evidence to support a finding that plaintiff waived his contractual right to have the sales made in his own name.

There is no evidence to indicate that plaintiff received and retained benefits or led defendant into any disadvantage after knowing that the sale was not made in his own name. The evidence is insufficient to invoke the doctrine of estoppel.

The doctrine of ratification is without application for the simple reason that plaintiff was not informed of defendant's unauthorized act and really never did anything after learning thereof which could be construed as an approval of the sale in defendant's name. To charge one with ratification he must have had full knowledge of the unauthorized act. That was lacking in this case. The talk before the written contract was made cannot be permitted to prevail over the subsequent written agreement creating rights to the contrary for the purpose of showing waiver, estoppel, or ratification. The record is silent as to plaintiff's essential knowledge, subsequent to the making of the written agreement, of defendant's unauthorized act.

■ Relative to the second cause of action, it is conceded that plaintiff authorized the pelting and the sale of the pelts and that defendant undertook to do this. It pelted the 13 foxes. The testimony is that defendant's president told plaintiff that the pelts were sold, that defendant had the money, that the pelts sold well and that 12 of the pelts averaged $300 each, that defendant had the money and would remit it. Plaintiff also testified that defendant's secretary told him that the pelts had been sold or were in New York or in London, England, or in Canada. It seems conceded that the cull pelt was worth only $50. Defendant did not remit. The evidence was sufficient to take this cause of action to the jury and to sustain the jury's finding that defendant converted the pelts.

■ When plaintiff rested he moved to amend the complaint as to the second cause of action by adding to paragraph 5 thereof: "and converted the same to plaintiff's damage." The motion was granted. This was not error. It was not a surprise. Counsel for defendant had put themselves upon the record as recognizing the action as one in conversion; in fact it was rather insisted that it

was such. The amounts of the verdicts are not reached by the usual method of figuring damages in conversion; but, since the parties agreed on the amounts to be recovered if a recovery was to be had, we are not concerned with the practice.

Affirmed.