# DRAKE-JONES COMPANY v. A. P. DROGSETH.[1]

February 3, 1933.

No. 29,107.

[1]Reported in 246 N. W. 664.

*Junell, Oakley, Driscoll & Fletcher, Kenneth M. Owen,* and *Murphy & Cook,* for appellant.

*Ryan, Ryan & Ryan,* for respondent.

HILTON, JUSTICE.

Appeal from an order denying plaintiff's alternative motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff is a stock brokerage concern. The transaction hereinafter referred to was conducted for it by its vice president, A. M. Drake. It involved the purchase by plaintiff of 50 shares of the capital stock of the First Bank Stock Corporation for $2,787.50 under an order given therefor by defendant, who later refused to take the stock as tendered. Plaintiff sold the stock on May 19, 1931, for $975 ($19.50 per share) with a resulting net loss of $2,011.25. The action was for that amount, with interest. On the record as made, plaintiff was entitled either to the amount claimed or nothing.

A contract relationship existed between the parties in which the defendant was the principal and plaintiff the agent. This case involves contract law. The important question, therefore, is as to what the contract of employment was. In that regard the evidence is somewhat in conflict. The jury, with sufficient evidence to warrant its conclusion, took defendant's view thereof.

On September 30, 1929, defendant, an assistant cashier of the First National Bank of Brainerd, telephoned from that place to plaintiff at Minneapolis asking the price of the stock. He then in the same conversation ordered plaintiff at once to purchase for him on the Minneapolis-St. Paul stock exchange 50 of such shares at the

quoted price of $55.75 per share. He stated in that conversation: "This has nothing to do with the bank at all. It is my personal buy. I want the stock issued in my name only"; and, further, that he would take it in no other way. He then instructed that the stock was to be sent to him at Brainerd with draft attached through the First National Bank of Minneapolis. Defendant testified that Drake promised to get the stock in defendant's name and send it up immediately.

On the date of the conversation plaintiff purchased on the designated exchange from Farnum, Winter & Company 50 shares of such stock at the price stated, the shares to be issued in "street name." Such was a custom of the exchange. In the absence of an express agreement to the contrary, such custom would control. Here there was, however, an express agreement inconsistent with that custom. The secretary-treasurer of the Minneapolis-St. Paul stock exchange testified as to the custom, and stated that the reason therefor was to facilitate delivery of the stock, and admitted that if the customer and the broker made a specific agreement governing delivery in the name of the customer and delivery was to be made within such and such a time the custom fails. A certificate of stock in "street name" means a certificate issued in the name of an individual and indorsed in blank by him so that the certificate passes from person to person without any further indorsement by anyone else.

On October 3 plaintiff wrote defendant of the purchase made for his account and stated:

"Upon receipt of the certificate in street name, we will forward same to you draft attached, in accordance with your request."

Upon receipt of this notice defendant at once wrote thereon the following statement and sent it to plaintiff:

"I am buying this stock for myself. Please draw through First National, Minneapolis."

This was but a confirmation of previous instructions. Drake testified that the statement written by defendant on the notice conveyed no news to him and stated: "I knew he wanted it for him-

self." With the notice sent there was a bill for $2,800, being the purchase price and $12.50 commission.

On November 7 plaintiff wrote defendant:

"We presume you have been wondering about delivery of the 50 shares of First Bank Stock Corporation confirmed to you some time ago. We were delayed unusually in securing the proper certificates for this stock from Chicago, but have received them today and have therefore forwarded same through the First National Bank of Minneapolis, * * *."

On November 8 the certificates, in "street name," were presented to defendant with draft attached. On November 9 the three certificates (representing the 50 shares of stock) were returned, acceptance of delivery thereof having been refused by defendant. On that date defendant wrote plaintiff advising of the return of the stock to the First National Bank of Minneapolis, giving as a reason therefor "the long, unwarranted and unreasonable delay in the delivery of the same to me." He then called attention to the time when the order was placed and further stated:

"Although several orders for the same stock were placed with yourselves by our bank since that time and delivery was made on those orders within a very few days, I have heard nothing of my order and did not receive the stock until now. My order was to buy the stock on the Twin. City Exchange the same day and it is apparent from your letter, as well as the dates of the certificates, that the order was not executed as directed, but was placed in Chicago."

Some of the other orders above referred to were sent for delivery with draft attached. Several later tenders of the "street name" certificates of stock were made to defendant and acceptance thereof refused by him. No certificates in defendant's name were ever tendered.

Defendant a number of times made inquiry of Drake by telephone as to why he was not getting his stock. About the middle of October, 1929, Drake was in the office of defendant at Brainerd,

when his attention was again called to the situation. Drake said he would look it up when he returned to Minneapolis. At that time defendant told him that if the stock was not sent to him at once he would cancel the order.

On November 6 plaintiff wrote a letter to Farnum, Winter & Company in which it was stated:

"Confirming our telephone conversation with you, we understand that you are not long any First Bank Stock Corporation shares for our account. We were not clear on our records, but shall now consider that you have no stock available for delivery to us."

Immediately after writing this letter plaintiff secured from Farnum, Winter & Company in Chicago certificates (in "street name") for 50 shares of the stock later tendered defendant on November 8, and gave its check in payment thereof for $2,787.50.

In its charge the court properly instructed as to the "street name" custom of the exchange and as to its binding effect in the absence of an express agreement to the contrary, and submitted to the jury the question of fact as to whether there was such an agreement. It also explained the meaning of the words "immediately" or "at once," if the jury found that the defendant had so specified relative to delivery. It was also stated that it was incumbent upon a broker, where there was an express contract, not only to execute the order but to execute it in conformity with the customer's instructions; that if plaintiff did so it was entitled to recovery in the amount claimed; that if the order was not so executed plaintiff was not entitled to recover, unless there was a ratification. "Ratification" was properly defined. The jury's verdict negatived any such ratification. In addition, the court outlined the applicable rules as to the necessity of repudiation by defendant within a reasonable time after ascertainment of what plaintiff had done.

In its memorandum the court stated:

"The jury have found also that when defendant was informed of the breach of his instructions he repudiated in due time. That may have been when the stock was tendered him. The evidence permits a finding that before plaintiff paid for the stock it had

reason to anticipate defendant would refuse to be bound. In any event, on the facts as found by the jury, plaintiff could not by its own conduct commit defendant to a transaction he had not authorized."

These observations were warranted by the record.

We do not here have a case where the agent carried out the instructions of his principal in accordance with the terms thereof; nor one where there was an investing of discretion in the agent or authority to exercise an independent judgment in the matter. The details of defendant's instructions to plaintiff were inseparable from the right of plaintiff to act for him at all. The claims of neither party are founded on negligence. Numerous cases cited by plaintiff are not in point on the situation here presented. This is especially true of cases where there was no agreement as to time of delivery. Here there was a place and time of delivery fixed, and also a specific agreement as to what name the stock should be issued in. Cases not having those features are readily distinguishable.

The rule applicable to the situation here is found in Meyer, Law of Stock Brokers & Stock Exchanges, p. 269, § 47(b), and p. 549, § 135:

"The broker is obligated not merely to execute the order, but to execute it in exact conformity with the customer's instructions. If the execution of the order is at variance with the customer's instructions or in contravention to the broker's legal duties, the customer may, at his election, treat it as a nullity, and regard his account as being in the same state as if there had been no execution at all." See also Goldsmith, Myer & Lobdell, Inc. v. Adler, 108 N. J. L. 312, 156 A. 642, 77 A. L. R. 305; Taussig v. Hart, 58 N. Y. 425; 2 C. J. p. 797, § 461.

The position in which plaintiff finds itself was due entirely to its own default in complying with the instructions given—the loss sustained was the direct result of that default, and it is not entitled to reimbursement for such losses. Mechem, Outlines of Agency (3 ed.) § 422, cited in Hoch v. Duluth B. & M. Co. 173 Minn. 374,

217 N. W. 503, 56 A. L. R. 970. As to the necessity of a broker following instructions relative to the name in which the certificate of stock should be issued, see Schrack v. McKnight, 84 Pa. 26. See also Nygaard v. Maeser Fur Farms, Inc. 183 Minn. 388, 237 N. W. 7.

■ Error is assigned because the court sustained defendant's objection to questions asked in rebuttal relative to the number of shares of stock sold or dealt with on an average in the First Bank Stock Corporation on the Twin City exchange from September 30 to November 7. Undisputed evidence, however, showed other deliveries of like stock in a few days from the time of receipt of the order therefor. If plaintiff could not comply with defendant's order for immediate delivery of the stock it readily could have protected itself against such a contingency. There was no error in this ruling.

All of the assignments of error have been considered, and we find them not well taken.

Affirmed.

